ELIZABETH C. KNISELY, Administratrix, Appellant, v. GRACE A. LEATHE, Executrix.

Division One, April 2, 1914.

1. **APPEAL: Demurrer: Motion to Strike Out: Motion for New Trial.** Where a motion to strike out that part of plaintiff's amended petition which, in order to avoid the bar of the Statute of Limitations, pleaded the bringing of a former suit, and a demurrer to the remainder of the petition on the ground that the demand sued on was barred by limitations, were filed on the same day, considered together, and the court's decision sustaining both was included in one entry, the trial court's

action as to both is for review on appeal despite the fact that, after judgment for defendant, the plaintiff failed to preserve, in a motion for a new trial, his exceptions to the sustaining of the motion to strike out.

2. LIMITATIONS: Action on a Writing. Unless it be barred by the special limitation governing the exhibition of demands against the estates of deceased persons, a suit upon a contract in writing to pay a sum of money to plaintiff's intestate upon the completion of a sale of certain lands to another by defendant's testator, falls under the ten-year Statute of Limitations (Sec. 4272, R. S. 1909), providing that "an action upon any writing, whether sealed or unsealed, for the payment of money or property" may be commenced within ten years.

3. ———: Administration: Exhibition of Demands: Filing Suit. Under Secs. 190-195, R. S. 1909, declaring that all demands not exhibited against a deceased's estate in two years shall be barred, but suits pending against a deceased person at his death shall be considered as demands legally exhibited from the time of revivor, and all actions begun against an executor or administrator shall be considered demands legally exhibited against the estate from the time of the service of the original process, etc., service of process in a suit against an executor within two years after the granting of letters testamentary stops the running of limitations, provided the cause of action was not barred by the general Statute of Limitations at that time, and the cause of action could then be kept alive or new actions brought during the time allowed by the general Statute of Limitations.

4. APPEAL: Pleading: Cause of Action: Demurrer: Points Considered. Where opposing counsel differ as to the nature of the cause of action—one treating it as a suit on a contract to pay money and the other treating it as an action for damages —and where a demurrer is sustained to the petition on the ground that the action is barred by limitations, the demurrer averring also that no cause of action is stated because the petition, which alleges that defendant's testator failed to perform his written contract to pay plaintiff's intestate a sum of money when said testator had sold certain lands to another and received payment, fails to state that the testator ever received any money from the other party mentioned as vendee, the case when reversed and remanded on the ground that the action was not barred by limitations should not be sent back without a holding on the question whether the petition states a cause of action.

Knisely v. Leathe.

5. **CONTRACTS: Agent to Find Purchaser for Lands: Commissions.** When an agent employed to procure a purchaser for lands has produced one with whom the owner enters into a valid and binding contract of sale, he is entitled to his commission, even though the purchaser prove to be unreliable and the owner refuse therefore to perform the contract of sale.

6. ———: **Sale of Lands: Liability to Agent.** A writing by which the owner of lands agrees in consideration of one dollar to sell them to W. on deferred payments, and to deliver a warranty deed, with abstracts showing a good title, said W. and his attorneys to be the sole judges as to the title and to have a reasonable time for surveys and examinations by engineers, is a sale of the lands, and upon its execution the owner's liability to the agent who provided the purchaser according to contract became fixed.

7. ———: ———: ———: **Owner's Failure to Complete the Sale: Actions.** Where the owner of lands contracted in writing with an agent that in the event of their sale to W. he would pay to the agent, for services rendered, $107,500 out of the purchase price, payable in four installments "at such time and place as I receive the principal payment for said real estate as per contract of sale entered into by me with W. of even date herewith," and said contract between the owner and W. was a valid and binding sale of the land, an action by which it is sought to recover from the owner's executrix the sum named in the contract with the agent is an action upon the contract for the payment of money, and not an action for damages, even though the petition shows that the owner refused to complete the sale to W.

Appeal from St. Louis City Circuit Court.—*Hon. C. Claflin Allen*, Judge.

REVERSED AND REMANDED.

*E. P. Johnson, Edward C. Crow* and *Morton Jourdan* for appellant.

(1)   This is an action on a plain and simple contract in writing. Bailey v. Chapman, 41 Mo. 538; Carpenter v. Rynders, 52 Mo. 281; Finch v. Trust Co., 92 Mo. App. 265; Concanon v. Mines & Mill Co., 156 Mo. App. 90; Kilpatrick v. Wiley, 197 Mo. 123; Rice

v. Mayo, 107 Mass. 550; Stewart v. Fowler, 53 Kan. 537; Hodgkins v. Mead, 29 N. Y. 671; Willes v. Smith, 77 Wis. 81; Ward v. Cobb, 148 Mass. 518; Flynn v. Jordal, 124 Iowa, 457; Merriman v. Wickersham, 141 Cal. 570; Flower v. Davidson, 44 Minn. 47. There was a sale, notwithstanding there was a clause of forfeiture in the contract; the latter provision being for the benefit of the vendor. Stewart v. Fowler, 53 Kan. 537; Willes v. Smith, 77 Wis. 81; Veazie v. Parker, 72 Me. 443. (2) The contract between Leathe and Knisely shows that the debt acknowledged in it was due from the former to the latter before the contract was entered into between them. Fitch v. Cunningham, 10 N. Y. 17; McComb v. Von Ellert, 7 Misc. (N. Y.) 59; Little v. Rees, 34 Minn. 277; Hough v. Baldwin, 50 Misc. (N. Y.) 546. (3) The nature of the services rendered by Knisely to Leathe that were the consideration for their contract, does not appear, but if they did appear and were for selling the property for Leathe, as his agent, it is not the duty of a real estate agent to see that a binding contract is entered into between his principal and the purchaser, nor that the terms of the sale are complied with by the purchaser, to enable him to recover his commissions. Morgan v. Keller, 194 Mo. 663; Gelatt v. Ridge, 117 Mo. 560; Finch v. Trust Co., 92 Mo. App. 263, 271; Hayden v. Grillo, 42 Mo. App. 1; Brown v. Smith, 113 Mo. App. 68. Knisely had done all that was required of him to be done by his contract. Love v. Owens, 31 Mo. App. 501; Carpenter v. Rynders, 52 Mo. 278; Bailey v. Chapman, 41 Mo. 536; Harwood v. Diemer, 41 Mo. App. 48; Goodson v. Embleton, 106 Mo. App. 77; Real Estate Co. v. Ruhlman, 68 Mo. App. 503; Finch v. Trust Co., 92 Mo. App. 270; Brown v. Smith, 113 Mo. App. 68; Nesbit v. Helser, 49 Mo. 383. (4) If Knisely had been simply an agent of Leathe, to make a sale of the property, and had concluded the terms of a sale of it with Wolcott, and Leathe had entered into a contract

Knisely v. Leathe.

of sale of the property with Wolcott as he did, Knisely would have been entitled to recover his commissions of Leathe, not only irrespective of whether Wolcott paid the purchase price to Leathe, but also irrespective of the question of the ability of Wolcott to pay it. A distinction that is generally recognized in the cases is, that if the broker signs the name of his principal to the written contract, the above rule does not apply unless his principal approves or accepts the written contract. Moore v. Irwin, 89 Ark. 289; Alt v. Doscher, 102 App. Div. (N. Y.) 344, 186 N. Y. 566; Fleet v. Barker, 120 App. Div. (N. Y.) 455; Van Varick v. Investment Co., 76 Misc. (N. Y.) 593; Gilder v. Davis, 137 N. Y. 504; Kalley v. Barker, 132 N. Y. 1; Brink v. Goodelle, 138 N. Y. Supp. 1035; Lombard v. Sills, 170 Mo. App. 555; Glade v. Mining Co., 129 Mo. App. 443, 455; Wright v. Brown, 68 Mo. App. 577; Robinson v. Lowe, 169 Mo. App. 443; Francis v. Baker, 45 Minn. 83; Fox v. Ryan, 240 Ill. 396; Wilson v. Mason, 158 Ill. 311; Friestedt v. Dietrich, 84 Ill. App. 604; Scully v. Williamson, 26 Okla. 19; Hugill v. Weekly, 64 W. Va. 210; Flynn v. Jordal, 124 Iowa, 457, 459; Wenks v. Howard, 149 Iowa, 16, 21; Johnson v. Holland, 211 Mass. 363; Roche v. Smith, 176 Mass. 595; Ward v. Cobb, 148 Mass. 518; Rice v. Mayo, 107 Mass. 550; Cook v. Fiske, 12 Gray, 491; Seabury v. Ins. Co., 205 Pa. St. 234; Hipple v. Laird, 189 Pa. St. 472; Keys v. Johnson, 68 Pa. St. 42; Coleman v. Meade, 13 Bush (Ky.), 358, 360; Veazie v. Parker, 72 Maine, 443; Odell v. Dozier, 104 Ga. 203; Wray v. Carpenter, 16 Colo. 271; Parker v. Estebrook, 68 N. H. 349; Conkling v. Krakauer, 70 Tex. 735; Mortgage Co. v. Thetford, 43 Tex. Civ. App. 536; Levistone v. Landreaux, 6 La. Ann. 26; Love v. Miller, 53 Ind. 294, 300; Middleton v. Findla, 25 Cal. 81; Coward v. Clanton, 122 Cal. 451; Lockwood v. Halsel, 41 Kan. 166; Stewart v. Fowler, 53 Kan. 537; Willes v. Smith, 77 Wis. 86; Parker v. Walker, 86 Tenn. 566; Mattes v. Engle, 15 S. D. 330; Loan & Inv-

Co. v. Spindle, 108 Va. 431; Land & Loan Co. v. Thompson, 86 Ala. 146, 149-150; Pfanz v. Humberg, 30 Ohio Cir. Ct. 711. Under the foregoing, the contract between Leathe and Wolcott for the sale of the property is ample proof in favor of appellant, that Wolcott was ready, able and willing to comply with his contract, and testimony in regard to the financial ability of Wolcott would not be admissible on a trial of this cause. Francis v. Baker, 45 Minn. 83; Fleet v. Barker, 120 App. Div. (N. Y.) 455. The foregoing is the settled doctrine of the courts of the United States on this question, except in the State of Maryland. Riggs v. Turnbull, 105 Md. 135. The case at bar is much stronger than the foregoing, as Leathe provided in his contract with Knisely, that the sale must be made to or through Wolcott. The principle on which said rule is based is, that where property is purchased and unqualifiedly accepted on delivery, or work done and so accepted, the contract is fully executed and payment therefor is due in the absence of a special contract otherwise. Waterworks Co. v. Joplin, 177 Mo. 527; Bishop on Contracts, secs. 795, 805. (5) The original petition herein was filed March 10, 1909, and a summons was issued thereon the next day. The latter was nine days prior to the expiration of two years after the first grant of letters testamentary on the estate. This summons was returned *non est* on its return day and an alias summons was issued on the latter day, which was returned duly executed April 27, 1909. If this case had been dismissed or a nonsuit taken in it the latter would have been the date of the exhibition of the claim in the case, under the literal terms of section 193. But there is no requirement of a previous exhibition of it when a regular presentation is made within the statutory period and prosecuted in court for allowance; a technical exhibition of a claim not being required for and having nothing to do with its allowance, but with its classification in certain cases.

McKee v. Allen, 204 Mo. 674; Waltemar v. Schnick's
Estate, 102 Mo. App. 133, 139; Spalding v. Suss, 4 Mo.
App. 549. The claim having been previously exhibited,
filing the petition herein and the issue of the summons
thereon was the beginning of this suit and arrested
the running of any statute of limitation against the
claim. McCormick v. Clopton, 150 Mo. App. 135; Mc-
Grath v. Railroad, 128 Mo. 1; State v. Wilson, 216 Mo.
215, 292. The issue of the alias summons on the re-
turn day of the original kept the process continuously
alive, and its service completed the bar to the running
of any statute of limitation. The service related back
to the filing of the petition and the appearance of re-
spondent did the same, even if the claim was not ex-
hibited previously. Especially is this true in the lat-
ter case under section 197, providing that claims may
be established against estates in courts of record "in
the ordinary course of proceeding." Waltemar v.
Schnick's Estate, 102 Mo. App. 133. (6) Sections 193
and 197 have been construed very liberally. Tevis v.
Tevis, 23 Mo. 256; Milan v. Pemberton, 12 Mo. 598;
Farrar v. Comfort, 33 Mo. 44; Williams v. Anthony,
47 Mo. 299; Gewe v. Hanszen, 85 Mo. App. 136; Rob-
inson v. Levy, 217 Mo. 510; Sec. 1844, R. S. 1909; Kelly
v. Thuey, 143 Mo. 429; Withers v. Railroad, 122 Mo.
App. 288. (7) This suit is on a written contract for
the payment of money by Leathe to Knisely, and comes
directly under the ten-year limitation prescribed in the
first clause of Sec. 1888, R. S. 1909, and it was begun
more than a year and a half before the ten years ex-
pired. Respondent claims that this is a suit for dam-
ages, which is not true, but if it were, it is on the
written contract and the ten-year statute applies to it.
Howe v. Mittelberg, 96 Mo. App. 490; State v. Brown,
208 Mo. 613. (8) The plea of the legal exhibition of
this claim to respondent, by the former suit, also an-
ticipated and avoided the defense of the special stat-
ute of limitation, if it had been running. Bliss on Code

Pleading, sec. 205; Monmouth College v. Dockery, 241 Mo. 555; Transportation Co. v. Sims, 36 Mo. App. 233; Smith v. Richmond, 19 Cal. 481; Kenedy v. Williams, 11 Minn. 320; Knox v. Gerhauser, 3 Mont. 271. And where the petition shows a bar by the statute, as it did in this case, it must also avoid it. State v. Yates, 231 Mo. 292; Burrus v. Cook, 215 Mo. 503; Zoll v. Carnahan, 83 Mo. 42; Bass v. Berry, 51 Cal. 264.

*A. & J. F. Lee, Charles M. Polk, Luther Ely Smith, George W. Lubke* and *George W. Lubke, Jr.,* for respondent.

(1) The ruling of the circuit court on respondent's motion to strike out part of appellant's third amended petition must be taken to have in part been the foundation of its later final judgment in the case. Hence to be reviewable on appeal a motion to set aside that judgment and thereafter the filing of a final bill of exceptions was necessary. Opportunity must first be given a lower court to correct errors by a motion to set aside its judgment or for a new trial or in arrest of judgment before they can be considered by the appellate court. Banks v. Landis, 39 Mo. 406; Bishop v. Ransom, 39 Mo. 416; Collins v. Saunders, 46 Mo. 389; Harris v. Harris, 145 Mo. 622; Williams v. Railroad, 112 Mo. 485; R. S. 1909, secs. 2029-2031; Atchison v. Railroad, 94 Mo. App. 572; Pace v. Roberts, 103 Mo. App. 662; Richardson v. Association, 156 Mo. 407; Reineman v. Larkin, 222 Mo. 156. (2) However, if the ruling of the trial court in sustaining respondent's motion to strike out parts of the appellant's third amended petition is properly before the court here for review on appeal then the record discloses no error in that ruling. The purpose of the pleader in making the allegations as to the previous suit evidently was an endeavor to avoid two years' special limitation declared by the administration statute barring demands

against decedent's estates by the pleader, invoking the saving clause of the general limitation statute which entitles parties who have suffered a nonsuit to commence a new suit within a year thereafter. R. S. 1909, sec. 1900. But this saving clause does not apply to cases where there is a special limitation. R. S. 1909, sec. 1907; Collins v. Pease, 146 Mo. 139; Clark v. Railroad, 219 Mo. 524; Geren v. Railroad, 60 Mo. 405; Revelle v. Railroad, 74 Mo. 438; Davenport v. Hannibal, 120 Mo. 150; State ex rel. v. Musick, 145 Mo. App. 33, 165 Mo. App. 214. There are three ways for exhibiting claims against the estates of decedents to avoid the bar given by the statute. One is by suit against the executor or administrator in a court of record or the revival of a suit pending against the deceased at his or her decease. In suits instituted against the executor or administrator the summons must, however, be served within the two years; and in suits pending at the decease of the testator or intestate the revivor must be within the two years. R. S. 1909, secs. 192, 193. And the judgment if favorable to the claimant must then be exhibited to the probate court and classified. R. S. 1909, secs. 196, 197. The demand must also be followed up in court pursuant to the notice or summons. Price v. McManus, 30 Mo. App. 627; Bank v. Marshall, 73 Mo. App. 108; In re Hensley, 121 Mo. App. 698. Respondent sued as executrix, was bound to invoke and could not waive this special statute of limitation. This statute is for the benefit of the devisees, heirs, distributees and other parties interested in the estate, and the executor or administrator cannot waive but must *virtute officii* plead it. Wiggins v. Levering's Adm., 9 Mo. 157; Spalding v. Suss, 4 Mo. App. 541; 2 Woerner's Am. Law of Adm., pp. 841-846. And for that the special statute creates the absolute bar by the mere lapse of time the defense based thereon was properly made by demurrer. State to use v. Bird, 22 Mo. 473; State ex

rel. v. Spencer, 79 Mo. 314. And where the petition shows no cause of action for that the demand is barred by the general limitation statute the rule in this State now is also that a demurrer thereto is proper and must be sustained. Burrus v. Cook, 215 Mo. 503; Garth v. Motter, 248 Mo. 477. The demand of the appellant was not founded upon a writing, sealed or unsealed, for the payment of money or property within the meaning of the general statute of limitation of ten years. R. S. 1909, sec. 1888. But was a demand for damages to which the written contract was an incident and was therefore governed by the five-year limitation. R. S. 1909, sec. 1889. And the demurrer to appellant's third amended petition was therefore also rightfully sustained on that ground. The demand was barred by the five-year limitation before the first suit was brought, August 1, 1907. Leathe's written contract with Knisely promised the latter for his services the $107,500 in installments ''out of the purchase price'' of the property ''at such time and place as the said Leathe should receive the principal payment on said real estate'' from Walcott. But Leathe never received any purchase money from Walcott. (3) Courts of equity will not aid in enforcing stale demands where the party has been guilty of laches or has slept upon his rights. Poverty cannot be allowed as an excuse. Perry v. Craig, 3 Mo. 516. Neither will a mistake of law. Price v. Estell, 87 Mo. 378. And courts of equity view with disfavor suits that are brought long after the transactions litigated have occured and death has sealed the lips of those familiar with the occurrences. Lenox v. Harrison, 88 Mo. 91; Burdett v. May, 100 Mo. 13.

BROWN, C.—This suit was instituted March 10, 1909, by filing in the clerk's office of the circuit court the original petition which stated that a copy of the written contract sued on was filed with it as an ex-

hibit. Summons issued next day returnable to the April term and was returned not found April 5. Alias summons issued on the same date returnable to the June term and was returned served on the defendant executrix April 27, 1909. The defendant appeared and answered during the April term, and the cause proceeded so that at the April term, 1910, and on June 4, the plaintiff with leave of court filed her third amended petition, which, omitting venue and signature, is in words and figures following:

"Elizabeth C. Knisely, Administratrix of the Estate of Charles H. Knisely, Deceased, Plaintiff, v. Grace A. Leathe, Executrix of the Estate of Samuel H. Leathe, Deceased, Defendant.

"Plaintiff, for third amended petition, filed by leave of court, states that Charles H. Knisely died in the city of St. Louis, State of Missouri, on the 17th day of July, 1904, intestate; that thereafter on the 30th day of August, 1904, she was duly appointed by the probate court of the city of St. Louis, Missouri, administratrix of the estate of said Charles H. Knisely, deceased, gave bond for the faithful discharge of her duties, qualified and is now acting as such by virtue of said appointment.

"Plaintiff further states that said Samuel H. Leathe died in the city of St. Louis, State of Missouri, on the 3rd day of March, 1907, testate. That the last will and testament of the said Samuel H. Leathe was duly admitted to probate by the probate court of the city of St. Louis, Missouri, on the 19th day of March, 1907; that by the terms of said will the defendant, Grace A. Leathe (who is the widow of said Samuel H. Leathe), was named as executrix without bond, and letters testamentary dated March 20, 1907, were issued to her by said court and she then qualified and entered upon the discharge of her duties as such executrix, and within thirty days after said letters were granted to her she published notice thereof

for three weeks as required by the provisions of section 86 of the Revised Statutes of Missouri, 1899.

"Plaintiff for her cause of action against defendant states, that on the 25th day of October, 1900, said Samuel H. Leathe and one Charles C. Wolcott made and entered into a contract in writing of that date (a copy of which is herewith filed and marked 'Exhibit A'), wherein and whereby the said Samuel H. Leathe, in consideration of the sum of one dollar to him paid by said Wolcott, agreed to and did sell to the said Wolcott, for the sum of $850,000, certain lands situate in the counties of St. Francois and Madison, in the State of Missouri, containing 37,514 acres, and being known as the Mine La Motte and other lands of the said Samuel H. Leathe, particularly described therein, together with all machinery, operating plant and personal property then and thereon belonging to the said Samuel H. Leathe; that in and by said contract said sum of $850,000 was made payable as follows: $300,000 in cash, as soon as the report of the engineer of said Wolcott upon said lands was completed and abstracts of title to said property examined by the attorneys of said Wolcott and deed delivered and possession of said property given to said Wolcott; one third of the remainder on or before one year from the date of delivery of title and possession of said property to him and one third in two years; and one third in three years thereafter. That in and by said contract the said Samuel H. Leathe agreed to execute and deliver a warranty deed to the said Wolcott of said property, with abstracts of title showing and conveying a good title to all of said real estate; and it was further especially agreed that said grantee, Wolcott, or his attorneys, should be the sole judges as to whether such abstracts and facts in relation thereto showed a good and indefeasible title to said lands in said grantor, Samuel H. Leathe, said deferred payments to be secured by a trust deed on

said property and notes to bear interest at the rate of six per cent per annum from their date, and that said Wolcott should have a reasonable time before making said first payment to have said lands surveyed, maps made thereof, and also to have his engineer to make a full and complete examination and report upon the property, such examination to begin not later than December 1, 1900.

"Plaintiff further says that the said Charles C. Wolcott caused his engineer to begin such examination of said property prior to said December 1, 1900, and that said Wolcott was at all times ready, able and willing to comply with and perform all of the other provisions of said contract to be complied with and performed by him, and he would have complied with and performed said other provisions of said contract to be kept and performed by him, but that said Samuel H. Leathe failed and refused to comply with his part of said contract in this, to wit:

"First: That he failed to execute and deliver to the said Wolcott a warranty deed as he had agreed.

"Second: The said Leathe failed and refused to deliver to said Wolcott, or his attorneys, abstracts of title showing good and indefeasible title to the said real estate described or any abstracts of title thereof whatever, which said abstracts of title said Wolcott requested and demanded of said Leathe, January 4, 1901.

"Third: The said Leathe repeatedly offered to sell and sold said premises prior to July 12, 1902, and subsequently sold and conveyed by deed the said property to a grantee other than said Wolcott, or any person or persons to whom he sold the same, to wit: the Mine La Motte Lead and Smelting Company, a corporation.

"Plaintiff further states that on the said 25th day of October, 1900, the said Samuel H. Leathe by his

256 Mo. 23

contract in writing (herewith filed and marked Exhibit 'B') promised, that in the event of the sale of said property described in said contract with said Wolcott of even date therewith, to or through said Wolcott or his assigns, for services rendered, the receipt and value of which services were thereby acknowledged, to pay to said Charles H. Knisely, plaintiff's intestate, or his order, the sum of $107,500 out of the purchase price of said $850,000, the payment of said $107,500 to be made by said Leathe to said Knisely in four payments, the first one of $37,941.19, and three additional payments of $23,186.27 each, at such time and place as the said Leathe should receive the principal payment on said real estate, as per the contract of sale entered into by him with the said Charles C. Wolcott of even date therewith, deferred payments of said amount to bear interest at the rate of six per cent per annum, the same as the original sum in said contract of sale entered into between said Leathe and Wolcott.

"Plaintiff further states that on the first day of August, 1907, she filed in the clerk's office of this court a petition wherein she was plaintiff, and defendant herein was defendant, setting forth the same cause of action therein as set forth in the petition in this cause and sued out process therein, on which petition a summons was issued directed to the sheriff of the city of St. Louis, who served the same upon the said defendant in said city of St. Louis on September 7, 1907, to which petition the defendant on October 7, 1907, filed an answer in this court. That said cause, No. 46,873, was pending in this court until February 15, 1909, when same was called for trial by the court during the absence of plaintiff, and on motion of defendant's counsel was dismissed by the court for failure of plaintiff to prosecute the same.

"That thereafter plaintiff filed a motion in said court to set aside dismissal, which motion said court overruled March 8, 1909. Wherefore, plaintiff says

that the demand set forth in the petition herein was legally exhibited against the estate of said Samuel H. Leathe, deceased, within one year after granting the first letters of administration on his estate.

"Plaintiff further states that the original petition herein was filed in said clerk's office on March 10, 1909, and process sued out therein on which a summons was then issued and delivered to said sheriff. That the cause of action herein accrued to plaintiff and against the defendant, who was a resident of this State, prior to the first day of January, 1909, and that defendant prior to the filing of said original petition departed from and absented herself from this State continuously until the 27th day of April, 1909, and thereby prevented the service of said or any other summons in this cause on her by said sheriff until the latter date.

"Plaintiff says that by reason of the premises aforesaid, the estate of said Samuel H. Leathe is justly indebted to plaintiff, as administratrix of the estate of Charles H. Knisely, in the sum of $107,500, with interest thereon at the rate of six per cent per annum, as aforesaid.

"Wherefore, plaintiffs prays judgment against the said defendant for the sum of $107,500, together with interest and costs."

At the June term and on June 8, 1910, the defendant filed her motion to strike out all that part of the third amended petition having reference to the suit filed by plaintiff August 1, 1907, on the ground that said part was irrelevant, that no right of action could be founded thereon, and that it was redundant and not proper matter to be pleaded.

Afterward on the same date the defendant filed a demurrer to all the third amended petition not included in the said motion to strike out, which demurrer, omitting venue and signatures, is as follows:

"Elizabeth C. Knisely, Administratrix of the Estate of Charles H. Knisely, Deceased, Plaintiff, v.

Grace A. Leathe, Executrix of the Estate of Samuel H. Leathe, Deceased, Defendant.

"And now comes the defendant and demurs to the plaintiff's third amended petition, other than the parts thereof on page four, beginning with line sixteen, and on page five, ending with line five, which parts defendant has filed a motion to strike out. And for ground of this demurrer the defendant assigns that said parts of said petition not moved to be stricken out do not state facts sufficient to constitute a cause of action.

"1. That said parts of plaintiff's third amended petition herein not moved to be stricken out show that defendant was granted letters testamentary and qualified as executrix of the estate of said Samuel H. Leathe, deceased, March 20, 1907, and duly published notice thereof, but said part of plaintiff's third amended petition does not show that the summons in this case was served on defendant within two years from March 20, 1907, as required by section 187 of the Revised Statutes of Missouri for 1899, but the return of the sheriff upon the alias writ issued herein shows that such service was made April 27, 1909, after the expiration of said two years; and said parts of said third amended petition not so moved to be stricken out also fail to show that plaintiff caused notice of her said pretended demand to be served on defendant and filed as required by section 198 or 212 of said statutes within said two years or that plaintiff within said two years filed notice of said pretended demand alleged in and by said third amended petition in the office of the probate court of said city as required by said section 212, wherefore plaintiff's said pretended demand was barred after March 20, 1907, by the special limitation of two years fixed by section 185 of said statutes when said summons was served herein on defendant April 27, 1909.

"2. Said petition fails to show that the deceased Samuel H. Leathe received from Charles C. Wolcott any money out of which the deceased Charles H. Knisely was to have been paid part, according to the terms of his contract with said Leathe, so that plaintiff's pretended cause of action herein for damages for breach of contract accrued prior to July 12, 1902, more than five years before this suit was begun."

At the April term, 1910, the court made the following order in said cause: "Elizabeth C. Knisely, Administratrix, etc., v. Grace A. Leathe, Executrix, etc., No. 58,063A. Now at this day the court having duly considered defendant's motion to strike out part of plaintiff's third amended petition, heretofore filed and submitted herein, doth order that said motion be and the same is hereby sustained. And the court having duly considered defendant's demurrer to all remaining parts of plaintiff's third amended petition (not stricken out on said motion), heretofore filed and submitted herein, doth order that said demurrer be and. the same is hereby sustained."

During the same term the plaintiff filed its bill of exceptions to the action of the court in striking out part of the third amended petition. On the last mentioned date the plaintiff declining to plead further the court rendered judgment for the defendant from which this appeal is taken.

I. The respondent's counsel say in their brief that neither the force nor effect of any provision of the written contract pleaded as the foundation of the action is involved in this record. We agree with them except in so far as such provision may have a bearing upon the questions raised by the motion to strike out and demurrer directed against the third amended petition, and upon which it was held so fatally defective that judgment was given to the defendant.

Demurrer and Motion to Strike Out: Appeal.

While it is agreed that the demurrer and the action of the court thereon are before this court as belonging to the record proper, respondent says that neither the motion nor the action of the court in sustaining it is here for review because the exception taken to that action was not followed up by a motion for a new trial in which the same matter was again made the subject of complaint and exception. If this be true, we take the petition, with all that portion covered by the motion eliminated, and have no power to review the action of the trial court in so emasculating it. Is this the condition of the record?

The motion to strike out covers that part of the petition which pleads the institution, pendency and dismissal of a previous suit, to avoid the bar of the Statute of Limitations which might otherwise arise on account of delay in bringing this action. The demurrer to the remainder is founded upon two specifications. The first amounts to a plea of the special limitation of two years prescribed for the exhibition of demands against deceased person by section 185, Revised Statutes 1899, and the other is a like plea of the limitation of five years contained in section 4273 of the same revision. These papers were filed on the same day, were considered together, and the decision of the court upon both was included in a single entry. Both together they amounted to a demurrer to the petition on the ground that it showed affirmatively upon its face that the demand sued on was barred by these statutes of limitations, of which the defendant chose to avail herself by demurring specially on that ground. Or, if we choose to put it the other way, they together constituted a motion to strike out the entire petition for reasons of which the defendant could avail herself or not as she chose, but which, if well founded, would destroy it as the statement of a cause of action. [Shohoney v. Railroad, 223 Mo. 649; same case 231 Mo. 131, 148, and cases cited; Burrows v. McManus, 249

Mo. 555.] It is the hybrid offspring with which we are concerned and not the arrangement of its parentage. The destruction of the petition upon which the entire record rests is the matter complained of and we cannot examine the record proper without taking cognizance of that fact by whatever process it may have been accomplished. The propriety of the action of the court in sustaining both the demurrer and the motion to strike out a part of the petition is therefore before us.

II. What provision of the general Statute of Limitations was applicable to and running against this demand at the time of Mr. Leathe's death? The defendant elected, by her demurrer, to plead the limitation of five years. "Whenever the defense is in the nature of a special privilege, of which the party can only avail himself by pleading it, then his pleading, whether by demurrer or answer must specify the ground of his defense" (State ex rel. v. Spencer, 79 Mo. 314), and if he seeks by his demurrer to take advantage of the Statute of Limitations, he must plead the very provision on which he depends. [Murphy v. DeFrance, 105 Mo. 53, 62; State v. Spencer, supra.] In this case he pleaded not only the special statute limiting the time for the exhibition of demands against the estates of deceased persons, but also the five year general limitation.

**Limitations: Action on a Writing.**

Section 4272, Revised Statutes 1899, provides that "an action upon any writing, whether sealed or unsealed, for the payment of money or property" may be commenced within ten years. This clause is more expressive in its breadth than in its length. It is attenuated by no qualifying word, such as "direct," or "unconditional," but includes every action for money or property founded upon a "writing." The contingency upon which it is to be paid or delivered does not

enter into the construction of this short and expressive clause. This action is brought upon the theory that it was the duty of the defendant's testator under the provisions of the contract with plaintiff's intestate pleaded in the petition, to carry out the terms of the contract of sale to Wolcott made the same day and to pay the sum sued for out of the proceeds; that having refused to do so the amount became due and payable; and, although the plaintiff's intestate could not, of course, enforce the specific performance of the contract with Wolcott, he stood in the same favorable position he would have occupied had it been honestly performed by the testator.

In Curtis v. Sexton, 201 Mo. 217, 230, the plaintiff had purchased from the defendant's partnership an interest in a tract of land which the partners promised in writing that they would at a given date repurchase if the plaintiff should so desire and request, at an amount equal to all sums paid by him on the original purchase, with ten per cent interest. The plaintiff expressed his desire, and tendered a deed to defendant, and requested the payment of the amount agreed on, which was refused, and the plaintiff brought suit to recover it. In holding that the limitation of ten years and not five applied the court said:

"In the case at bar there is an express agreement to pay the amounts the plaintiff paid on account of his purchase and interest thereon, the only necessity for going beyond the paper writing to make out the case is to show the performance of the contract on the part of the plaintiff and the breach on the part of the defendant. The action is founded on the written contract and falls within the ten-year section of the Statute of Limitations."

We see no difference in principle between the case we are considering and the one just cited. In the latter the amount sued for was the agreed purchase price of the land, but the refusal of the defendant to take

the deed when tendered did not prejudice the plaintiff's right to recover it, as if his tender had been accepted. It makes no difference, however, whether the suit be in debt for the amount due upon a contract, or in covenant to recover unliquidated damages for its breach. Both are alike on the contract; and if the contract is "for the payment of money or property" it fills the requirement of the provisions of the Statute of Limitations we have quoted. The following cases are more or less in point on the same question: Reyburn v. Casey, 29 Mo. 129; Moorman v. Sharp, 35 Mo. 283; Henoch v. Chaney, 61 Mo. 129, 133; Miner v. Howard, 93 Mo. App. 569. We have no doubt that the ten-year limitation would apply in a suit of this character brought on a similar contract in the lifetime of the party.

III. There remains, stripped of these preliminary matters, the important question presented by this appeal: Is the demand sued on barred by the special limitation of two years in force when the suit was begun? The special provisions relating directly to that period of limitation in case of demands against the estates of deceased persons are, as they appear in the Revised Statutes of 1909, as follows:

———: Demands Against Estate of Deceased; Suit Against Executors.

Section 190, relating to the classification of demands, provides that the fifth class shall consist of "all demands, without regard to quality, which shall be *legally exhibited* against the estate within one year after the granting of the first letters on the estate;" and in the sixth class, "all demands *thus exhibited* after the end of one year and within two years after letters granted." And section 191 provides that "all demands not *thus exhibited* in two years shall be forever barred," etc. By section 192 suits pending against the deceased at the time of his death are to

be considered as demands *legally exhibited* from the time of their revivor, and by section 193 "all actions commenced against such executor or administrator, after death of the deceased, shall be considered demands *legally exhibited* against such estate from the time of serving the original process on such executor or administrator." Section 194 provides that demands may be exhibited by serving upon the executor or administrator a notice in writing, stating the amount and nature of the claim with a copy of the instrument of writing or account upon which it is founded; and that such claim shall be considered legally exhibited from the time of service of such notice or its waiver in writing; and section 195 requires that to avail himself of that method of exhibition the claimant must present his demand to the court in the manner provided by law, for allowance, within two years after the granting of letters. Originally both the last clause of section 190 and also section 191, contained following the words "thus exhibited," the words "and presented to the court for allowance" (R. S. 1889, secs. 183 and 184), but these were stricken out by amendment in 1899. [Laws 1899, p. 38.]

We have given the foregoing summary of the several statutory provisions affecting the limitation of actions for the establishment and collection of demands against the estates of deceased persons for the purpose of showing that the Legislature has made a plain and deliberate distinction between the exhibition of such demands and their presentment for allowance; that it has emphasized this distinction by striking out by amendment those provisions of sections 183 and 184 of the Revised Statutes of 1889 which required that they must be "presented to the court for allowance" to stop the running of the special statute, and also by providing that in certain instances the demand may be exhibited at one time and presented for allowance at another and later time; but in every case

the course of the statute is arrested by the "legal exhibition" of the demand. There is no avenue of escape from the direct declaration of the Legislature that on September 7, 1907, the date of the service of the original process in the first suit brought by the plaintiff against the defendant executrix on this demand, the running of the special statute against it stopped and it was then the duty of the defendant to classify it immediately in the fifth class and report it to the court in his first annual settlement. [R. S. 1909, sec. 156.] Up to that time two statutes of limitations were running simultaneously against the claim—the general and the special. At the expiration of the term provided by either, the action would be barred as to both. [McKinzie v. Hill, 51 Mo. 303.] Comparison of the language of these two statutes may also throw some light upon the legislative purpose. The general statute is directed only against the particular remedy which it is intended to exclude. It employs the time-honored formula that a civil action can only be commenced within the time limited; that is to say, the time is limited with reference to the beginning of the particular action in which the plea is made. The special statute before us provides that the demand shall be barred against all remedy unless it be *exhibited* within the time limited, thus necessarily implying the correlative proposition that all remedies will be preserved by its exhibition within the time. The defendant, on the other hand, seems to contend that while the exhibition of the demand impeded the running of the special statute for a time, the dismissal of the suit swept away the impediment, and the placid waters of repose resumed their flow undisturbed into legal oblivion. She refers to no statute, nor does she cite any authority in support of this contention. The limitation depends entirely upon the statute for its existence, and we have no authority to write into it what the Legislature has left out.

We have already mentioned the fact that the special limitation goes hand in hand with that imposed by the general statute. When a demand is barred by the latter it cannot be a living one through the former. [McKinzie v. Hill, supra.] Had this cause of action accrued nine years before the issue to defendant of letters testamentary it would not wait to be barred by the special statute in two years, but would come within the bar of the general statute at the end of the first year. Were suit brought during that first year it would be a perfect statutory exhibition of the demand, and therefore stop the running of the special and general statutes of limitation. The special limitation would then be out of the case, the only condition required to prevent it from running having been fully performed, and it would only remain to take such steps that the action already pending could be kept alive, or new actions brought during the period of limitation prescribed by the general statute. Should a nonsuit or dismissal be suffered the suit might be renewed as provided in section 1900, Revised Statutes 1909, under the very letter of which it would fall. We see no difference in principle between such a case and this one. The bringing of the suit and service of the original process September 7, 1907, exhibited the demand and stopped the running of the special statute. [Tevis v. Tevis, 23 Mo. 256; Farrar v. Christy, 33 Mo. 44, 56; Ryans v. Boogher, 169 Mo. 673, 684.] This suit was dismissed during the absence of plaintiff on February 5, 1909; a motion was filed to set aside the judgment of dismissal, and overruled March 8, and on March 10, 1909, the petition in this case was filed and process sued out thereon, at which time it still lacked ten days of being two years since the issue of letters testamentary to the defendant.

The general code (R. S. 1909, sec. 1756) provides that "suits may be instituted in courts of record, ex-

cept where the statute law of this State otherwise provides . . . by filing in the office of the clerk of the proper court a petition setting forth the plaintiff's cause or causes of action, and the remedy sought, . . . and suing out thereon a writ of summons.'' So far as the provisions of our general statute of limitations is concerned this has always been considered such a commencement of an action as arrests its running. [State ex rel. v. Wilson, 216 Mo. 215, 292, and cases cited.] In this case, however, it is claimed that it is otherwise provided by the statute fixing a limitation to the presentation of demands against the estates of decedents. We have already seen that the provision relating to service of summons on the executor or administrator only applies to the *exhibition* of the demand, and that there can be but one exhibition of the same demand. It follows that the present suit was instituted in time to avoid the bar of the special limitation.

While the demurrer states that the petition does not state a cause of action, it expressly places its conclusion on the ground that the cause of action appeared upon the face of the petition to be barred by the Statute of Limitations. Respondent makes no other objection here. Under these circumstances we have confined our examination to the question presented to and decided by the circuit court, and again presented by this appeal, leaving all other questions to be decided as they may hereafter arise.

For the reasons we have stated, the judgment will be reversed, and the cause remanded. *Blair, C.,* concurs.

PER CURIAM.—The foregoing opinion by BROWN, C., is adopted as the opinion of the court. *Lamm, J.,* concurs. *Graves, J.,* dissents in part and concurs in part in separate opinion in which *Woodson, P. J.,* and *Bond, J.,* concur.

GRAVES, J.—I. I concur in all that is said by our learned Commissioner in this case, except where he says that the respondent raises no other questions here besides those disposed of by the opinion, and wherein he says that all other questions should be left to future determination. I think there is another question of vital importance which should be now determined to the end that this case may be properly tried when tried anew below. Counsel differ as to the character of the instrument involved in this suit, and even as to the character of the action. Counsel for plaintiff contends that the petition is one upon a contract to pay money, and that the amount to be recovered is measured by the provisions in the written instrument, while respondent in her brief, through her able counsel, thus denominates the cause of action:

**Cause of Action.**

"The purpose of both suits was to establish a pretended *demand for damages* against the Leathe estate for $107,500 on account of services which the deceased Knisely claims to have rendered Leathe in an endeavor by Leathe to sell for $850,000 to one Charles C. Wolcott 37,514 acres of land in St. Francois and Madison counties, Missouri, known as the Mine La Motte property, together with the machinery, operating plant and other property thereon belonging to said Leathe."

Thus it appears that the theory of the one party is that the action is one upon a written contract for the recovery of a specified sum, stated in the contract, whilst the theory of the other is that the petition states only an action for damages. In the one instance the contract would be the very basis of the action, whilst in the other it would be purely evidentiary. Again, in the brief this diverse contention of the parties is further emphasized by respondent's counsel, in this pointed language:

"(h) The demand of the appellant was not founded upon a writing, sealed or unsealed, for the

payment of money or property within the meaning of
the general Statute of Limitation of ten years. [R. S.
1909, sec. 1888.]    But was a demand for damages
to which the written contract was an incident and was
therefore governed by the five-year limitation.  [R. S.
1909, sec. 1889.]    And the demurrer to appellant's
third amended petition was therefore also rightfully
sustained on that ground.  The demand was barred by
the five-year limitation before the first suit was brought
August 1, 1907. Leathe's written contract with Knisely
promised the latter for his services the $107,500 in in-
stallments 'out of the purchase price' of the property
'at such time and place as the said Leathe should re-
ceive the principal payment on said real estate' from
Wolcott.    But Leathe never received any purchase
money from Wolcott; and if Leathe wrongfully refused
to perform his contract with Wolcott the latter's ac-
tion at law would only have been one for unliquidated
damages for such breach to which the five-year limita-
tion would have applied.    Knisely's demand under
these conditions was not greater than Wolcott's. They
were analogous.''

We should not leave this case in this kind of a tur-
moil upon a retrial thereof *nisi*.

Not only is this diverse contention squarely sug-
gested and argued in the briefs here, but it was like-
wise argued in the very demurrer which was sustained
by the lower court.  In that demurrer it is said:

''Said petition fails to show that the deceased
Samuel H. Leathe received from Charles C. Wolcott
any money out of which the deceased Charles H.
Knisely was to have been paid part, according to the
terms of his contract with said Leathe, so that plain-
tiff's pretended cause of action herein for damages
for breach of contract accrued prior to July 12, 1902,
more than five years before this suit was begun.''

Whilst it is true that this second point of the
demurrer says something about the five-year Statute

of Limitations, yet it is further true that it urges that the petition fails to state a cause of action because it fails to state that Leathe ever received any money from Wolcott. It is clear that counsel for respondent were urging that plaintiff could not recover because there had been no money paid by Wolcott to Leathe. So that from all standpoints the character of this written instrument between Leathe and Knisely is a vital question here in view of the fact that this case must go back for trial below. Not only so but the very character of the suit is challenged and the court below having sustained the demurrer as a whole we must take the view here that the trial court stood with respondent upon these contentions as to the character of the suit, and the character of the contract. He could not have sustained the second ground of demurrer, as he did, without saying that the written contract was not one "for the payment of money or property," or without saying that the suit was not upon the written contract, but was one for damages of which the written contract might be purely evidentiary. So that throughout this record these questions bristle as big as life, and they should be determined at this trial, to the end that another appeal to determine them may be averted. We are of opinion that the demurrer was improperly sustained upon any theory of the case, and shall proceed to discuss the character of this petition and the contract upon which we think the cause of action is based.

II. This action is one upon the contract for the money mentioned therein, and not an action for damages for the breach of the contract. It is clear that the petition proceeds upon that theory. Eliminating from the petition matters relative to the Statutes of Limitations and the status of the parties plaintiff and defendant, it reads:

"Plaintiff for her cause of action against defendant states, that on the 25th day of October, 1900, said Samuel H. Leathe and one Charles C. Wolcott made and entered into a contract in writing of that date (a copy of which is herewith filed and marked 'Exhibit A'), wherein and whereby the said Samuel H. Leathe, in consideration of the sum of one dollar to him paid by said Wolcott, agreed to and did sell to said Wolcott for the sum of $850,000, certain lands situate in the counties of St. Francois and Madison, in the State of Missouri, containing 37,514 acres, and being known as the Mine La Motte and other lands of the said Samuel H. Leathe, particularly described therein, together with all machinery, operating plant and personal property then and thereon belonging to the said Samuel H. Leathe; that in and by said contract said sum of $850,000 was made payable as follows: $300,000 in cash, as soon as the report of the engineer of said Wolcott upon said lands was completed and abstracts of title to said property examined by the attorneys of said Wolcott and deed delivered and possession of said property given to said Wolcott; one third of the remainder on or before one year from the date of the delivery of title and possession of said property to him and one third in two years; and one third in three years thereafter. That in and by said contract the said Samuel H. Leathe agreed to execute and deliver a warranty deed to the said Wolcott of said property, with abstracts of title showing and conveying a good title to all of said real estate; and it was further especially agreed that said grantee, Wolcott, or his attorneys, should be the sole judges as to whether such abstracts and facts in relation thereto showed a good and indefeasible title to said lands in said grantor, Samuel H. Leathe, said deferred payments to be secured by a trust deed on said property and notes to bear interest at the rate of six per cent

per annum from their date, and that said Wolcott should have a reasonable time before making said first payment to have said lands surveyed, maps made thereof, and also to have his engineers to make a full and complete examination and report upon the property, such examination to begin not later than December 1, 1900.

"Plaintiff further states that the said Charles C. Wolcott caused his engineer to begin such examination of said property prior to said December 1, 1900, and that said Wolcott was at all times ready, able and willing to comply with and perform all of the other provisions of said contract to be complied with and performed by him, and he would have complied with and performed said other provisions of said contract to be kept and performed by him, but that said Samuel H. Leathe failed and refused to comply with his part of said contract in this, to wit:

"First: That he failed to execute and deliver to the said Wolcott a warranty deed as he had agreed.

"Second: The said Leathe failed and refused to deliver to said Wolcott, or his attorneys, abstracts of title showing good and indefeasible title to the said real estate described or any abstracts of title thereof whatever, which said abstracts of title said Wolcott requested and demanded of said Leathe January 4, 1901.

"Third: The said Leathe repeatedly offered to sell and sold said premises prior to July 12, 1902, and subsequently sold and conveyed by deed the said property to a grantee other than said Wolcott, or any person or persons to whom he sold the same, to wit: the Mine La Motte Lead and Smelting Company, a corporation.

"Plaintiff further states that on the said 25th day of October, 1900, the said Samuel H. Leathe by his contract in writing (herewith filed and marked 'Exhibit B'), promised, that in the event of the sale of

said property described in said contract with said Wolcott of even date therewith, to or through said Wolcott or his assigns, for services rendered, the receipt and value of which services were thereby acknowledged, to pay to said Charles H. Knisely, plaintiff's intestate, or his order, the sum of $107,500 out of the purchase price of said $850,000, the payment of said $107,500 to be made by said Leathe to said Knisely in four payments, the first one of $37,941.19, and three additional payments of $23,186.27 each, at such time and place as the said Leathe should receive the principal payment on said real estate, as per the contract of sale entered into by him with the said Charles C. Wolcott of even date therewith, deferred payments of said amount to bear interest at the rate of six per cent per annum, the same as the original sum in said contract of sale entered into between said Leathe and Wolcott.

"Plaintiff says that by reason of the premises aforesaid, the estate of said Samuel H. Leathe is justly indebted to plaintiff, as administratrix of the estate of Charles H. Knisely, in the sum of $107,500 with interest thereon at the rate of six per cent per annum, as aforesaid.

"Wherefore, plaintiff prays judgment against the said defendant for the sum of $107,500, together with interest and costs."

A study of the foregoing petition shows that the plaintiff is suing upon the contract of Leathe with Knisely for the money therein agreed to be paid, and not otherwise. The pleading of the Leathe-Wolcott contract was for the purpose of showing that Leathe had actually sold the property to Wolcott, and had actually accepted the purchaser found by Knisely, and for that reason the commission mentioned in the Leathe-Knisely agreement had been in fact and in law earned. The pleading of the other ex-

*Finding Purchaser for Lands: Owner's Liability to Agent.*

trinsic facts was but to show that the money was due
at the date of the demand or suit. The petition pro-
ceeds upon the theory, and rightfully so, that if Wol-
cott purchased the property and a completion of that
purchase by exchange of deeds and trust-deeds was
prevented by the act of Leathe, then the money men-
tioned in the Leathe-Knisely contract at once became
due, and this too, without reference to the payment of
any money by Wolcott. In other words that Leathe
could not wilfully refuse to enforce the Wolcott con-
tract, and thereby defeat the promise to pay made in.
the Knisely contract. It follows that counsel for re-
spondent are in error when they insist that the action
is one sounding in damages for a breach of contract.
It also follows that the circuit court was in error if it
followed this bent of counsel's mind. It is further
true that the court was in error, when in sustaining
the second ground of the demurrer, that the petition
stated no cause of action without the allegation that
the money had been paid by Wolcott. That one hav-
ing an enforceable contract of sale with another per-
son, induced and procured by an agent, can not defeat
the agent's commission by refusing to enforce the con-
tract, is well settled law. His refusal to carry out the
contract, or, in the event he himself has signed the
contract of sale with the purchaser, his refusal after-
wards to enforce such contract renders him liable for
commission in the sum agreed upon.

Thus in Roche v. Smith, 176 Mass. l. c. 597, is it
said:

"Where the broker is employed to get a customer
to buy and pay for his principal's land, and it turns
out that the customer is not able to pay for the land,
it is settled that his inability to do so does not deprive
the broker of his commission, provided the principal
made a valid and binding agreement for the sale of
the land with the customer produced by the broker.
[Ward v. Cobb, 148 Mass. 518; Burnham v. Upton,

174 Mass. 408, 409.] The ground on which this is settled is that by entering into a valid contract with the customer produced by the broker the principal accepts the customer as able, ready, and willing to buy the land and pay for it. In such a case the decision would have to be the other way were it not that, by entering into the contract with him, the principal accepts the customer produced by the broker; what the broker is employed to do is to produce a customer who will buy and pay for his principal's land. [Fitzpatrick v. Gilson, 176 Mass. 477.] If it turns out that the customer produced by the broker is not able to pay and does not pay for the land, the broker has not performed his duty and has not earned his comission; and it is only because the principal acepts the customer by entering into a valid contract with him, that it is held in cases like Ward v. Cobb that the broker has earned his commission. [Coleman v. Meade, 13 Bush, 358; Donohue v. Flanagan, 9 N. Y. Supp. 273; Francis v. Baker, 45 Minn. 83; Wray v. Carpenter, 16 Cal. 271; Lockwood v. Halsey, 41 Kans. 166; Springer v. Orr, 82 Ill. App. 558.]

"The law is settled in other jurisdictions in accordance with Ward v. Cobb, 148 Mass. 518. See Francis v. Baker, 45 Minn. 83; Wray v. Carpenter, 16 Cal. 271; Love v. Miller, 53 Ind. 294; and generally that a broker makes out a case for a commission earned by proving a contract made. See Cook v. Fiske, 12 Gray, 491; Rice v. Mayo, 107 Mass. 550; Keys v. Johnson, 68 Pa. St. 42; Veazie v. Parker, 72 Maine, 443; Conkling v. Krakauer, 70 Tex. 735, 739."

In the later case of Johnson v. Holland, 211 Mass. l. c. 364, the same court says:

"The defendant's testator having accepted the proposed purchaser by entering into the written contract of sale with him, it was not necessary for the plaintiffs to prove at the trial that the purchaser was able, ready and willing. When the valid written con-

tract was executed the commission of the plaintiffs was earned. [Roche v. Smith, 176 Mass. 595, 597, and cases cited.] The plaintiffs were not obliged to go further."

In this State, SMITH, P. J., in Wright v. Brown, 68 Mo. App. l. c. 583, among other things said:

"And when the purchaser is accepted and the contract executed, the principal cannot be heard to say when the agent calls on him for compensation, that 'you did not produce a purchaser who was financially able to perform the contract and respond in damages, in case of nonperformance by him, and therefore I owe you nothing for your services.'"

The same doctrine is approved by JOHNSON, J., in the more recent case Glade v. Mining Co., 129 Mo. App. l. c. 455.

For a long line of authorities from all parts of the United States, along the same line, see brief of appellant. The doctrine bears the impress of reason. The agent brings to the seller a purchaser. The seller does not have to accept any kind of a purchaser, but he may do so. The seller can size up the purchaser and either accept or reject him. If he accepts him, he at once becomes liable to the real estate agent who produced the customer, although the purchaser may not afterwards meet the expectations of the seller. The fact, if it be a fact, as alleged in the petition, that Leathe accepted Wolcott as a purchaser by entering into a contract of sale with him, if he did enter into such contract, would render Leathe liable to Knisely for the agreed commission, unless there was some express agreement to the contrary. As said, the rule is based upon the idea that the seller does not have to accept an unworthy or unreliable purchaser, but that he may accept him if he choose so to do, and if he does accept the purchaser the deal between him and his real estate agent becomes a sealed book. The commission has been earned and must be paid.

Knisely v. Leathe.

III.  The paper writing between Leathe and Wolcott was a sale of the property to Wolcott by Leathe.  Such contract, omitting the description of the land, reads:

**Sale of Real Estate.**

In consideration of one dollar, receipt thereof is hereby acknowledged, I have this day agreed to sell to Charles C. Wolcott, party of the second part, all of the following described land, situated in the counties of St. Francois and Madison, in the State· of Missouri, containing thirty-seven thousand (37,514) five hundred and fourteen acres, described as follows:

. . . . . .

Together with all machinery, operating plant and personal property now thereon, belonging to said vendor, for the sum of eight hundred and fifty thousand ($850,000.00) dollars, this amount payable as follows:   Three hundred thousand dollars in cash as soon as engineers' report is completed upon the property and abstracts of title are examined by the attorneys of the party of the second part, deed delivered and possession given; one-third of remainder on or before one year from ·date of delivery of title and possession, one-third in two years, and one-third in three years.

Said party of the first part agrees to execute and deliver a warranty deed, with abstracts of title, showing and conveying good title to all the real estate above described.

It is especially agreed that said grantee or his attorneys shall be the sole judge as to whether such abstracts and facts in relation thereto show a good and indefeasible title to said lands in grantor herein mentioned.   Deferred payments to be secured by a trust deed on the property, and notes to bear interest at the rate of six per cent (6 per cent) per annum from their date, payable on or before.

It is further agreed that the party of the second part shall have a reasonable time before making first payment to have lands surveyed and maps made of same, also to have their engineer make a full and complete examination and report upon the property, such examination to begin not later than December 1, 1900.

A failure by the party of the second part to comply with the above contract or to make such payments as they come due, shall make this contract null and void.

Witness our hands this 25th day of October, 1900.

[10-cent U. S. Rev. Stamp affixed and cancelled]

S. H. Leathe,<br>Charles C. Wolcott.

When Leathe signed this contract with Wolcott, if he did sign it, his liability to Knisely, the procuring

agent, became fixed, unless such liability was defeated by some express agreement to the contrary. And this brings us to the Knisely contract as pleaded and sued upon in this case.

IV. The Knisely contract can well be gathered from the pleadings heretofore set out, Owner's Failure but that there may be no misunder-to Complete Sale. standing we quote it thus:

"In the event of the sale of the Mine La Motte estate and additional lands belonging to me (described in contract with Charles C. Wolcott of even date herewith) amounting in total to 37,500 acres, to or through Charles C. Wolcott of New York or his assigns, for services rendered, the receipt and value of which are hereby acknowledged, I hereby promise and agree to pay to Charles H. Knisely, of St. Louis, Missouri, trustee, or his order, the sum of one hundred and seven thousand five hundred ($107,500) dollars out of the purchase price of $850,000; the payment of said $107,500, to be made by me to said Charles H. Knisely, trustee, or his order, in four payments, the first one of $37,941.19, and each of the three additional payments of $23,186.27 each, at such time and place as I receive the principal payment for said real estate as per contract of sale entered into by me with Charles C. Wolcott of even date herewith; deferred payments of the amount above written to bear six per cent interest per annum, the same as the original principal sum.

"Done at St. Louis, Mo., this twenty-fifth day of October, A. D. 1900.          S. H. LEATHE."

This contract, at least when coupled with the allegations that Wolcott or his assigns stood ready and willing to perform and Leathe refused and failed to perform the Leathe-Wolcott contract, rendered Leathe liable at once for the full amount agreed to be paid

in the Knisely contract as and of the date of such re-
fusal, and this too in a suit upon the contract. [Cur-
tis v. Sexton, 201 Mo. 1. c. 230.] In that case VAL-
LIANT, P. J., said: "In the case at bar there is an
express agreement to pay the amounts the plaintiff
paid on account of his purchase and interest thereon,
the only necessity for going beyond the paper writ-
ing to make out the case is to show the performance
of the contract on the part of the plaintiff and the
breach on the part of the defendant. The action is
founded on the written contract and falls within the
ten-year section of the Statute of Limitations."

So in this case. The action is upon the contract,
and at the very most it is only required to go outside
of the contract to show that Wolcott was ready and
willing to perform, and Leathe refused to perform,
the Wolcott-Leathe contract. In fact, under all the
case law, except that of Maryland, the fact that Leathe
accepted Wolcott as a purchaser, and he himself con-
tracted with him as such, eliminates the proof that
Wolcott was able, ready and willing to perform as
is indicated by the case quoted from and cited, supra,
unless, of course, some fraud was practiced upon
Leathe in reference to the contract.

The circuit court seems to have so misunderstood
the case, and the diverse views of counsel in the briefs
are such, that the case should not be sent back with-
out some expression from this court upon the ques-
tions. With these added views, I concur. *Woodson,
P. J.,* and *Bond, J.,* concur in these views.