Let judgment be entered accordingly.

LEE v. LEE.

(Supreme Court, Special Term, New York County. February 28, 1916.)

1. HABEAS CORPUS ☞99(3)—CUSTODY OF CHILDREN—RELATIVE RIGHTS OF FATHER AND MOTHER.

A father has no right to the custody of a child superior to that of the mother, and the welfare of the child is the real test.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 84; Dec. Dig. ☞99(3); Parent and Child, Cent. Dig. §§ 4–32.]

2. HUSBAND AND WIFE ☞278(1)—SEPARATION AGREEMENTS—CUSTODY OF CHILDREN.

A separation agreement, made by a husband and wife during the pendency of an action by the wife for a separation, whereby the wife was given a permanent allowance and was awarded the custody of a son 4½ years old, while the husband was given the custody of an older son, was not invalid, on the theory that a husband cannot by agreement alienate to his wife the right to the custody of their children, in view of the fact that a wife is now permitted to contract with the freedom of a feme sole.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1046–1049, 1051, 1053; Dec. Dig. ☞278(1); Contracts, Cent. Dig. §§ 515, 517.]

Proceeding by one Lee against one Lee involving the custody of a child. Writ sustained, and custody of the child awarded to the relator.

Slade & Slade, of New York City, for relator.

Thomas G. Barnes, of Ossining, for respondent.

SHEARN, J. [1] It is claimed that a father has the paramount right to the custody of a child. This was once the law, but we have emerged from the Dark Ages, during which married women had the status of slaves and chattels. The only basis for the father's alleged superior right to-day is his obligation to support his children. This basis disappears when one considers what a mother gives to her children in suffering, self-sacrifice, and devotion. On any admeasurement of rights determined by service rendered, the right of a mother to the custody of her children is at least equal to that of the father. The real test should be the welfare of the child.

[2] While the father's supposed paramount right is asserted in this case, the decision really turns on another question—the validity of a

separation agreement wherein the father divests himself of the custody of a child and surrenders it to the mother. This agreement was made after actual separation, and during the pendency of an action instituted by the wife for a separation. The agreement was a fair and proper one in every respect, considering both the parties and their children. It was signed in the presence of and apparently had the approval of a justice of this court, and it avoided the necessity of a painful and distressing trial. By it the wife discontinued the suit and relinquished a temporary allowance of $20 a week; accepting a permanent allowance of $12 a week while living separate and apart from her husband. The custody of the elder son, now over 8 years of age, was given to the father, and the custody of the younger son (the child in question), now about 4½ years of age, was given to the mother. It was further provided that opportunity should be given both parties to see the children any time, and that each parent should have the two children with them at alternate week-ends and for one month of the school vacation; the wife agreeing to reside with her mother and in any event to maintain her home not more than 35 miles from New York City, and the father living in Ossining. No question of the moral fitness of either the father or the mother is involved. Other things being equal, the propriety of giving to the mother the custody of a child only 4½ years old is sufficiently obvious.

But the father asserts that the agreement is invalid and not binding on him, resting his contention upon the case of People ex rel. Barry v. Mercein, 3 Hill, 399, 38 Am. Dec. 644. It was held in that case that a husband cannot by agreement alienate to his wife the right to the custody of their children. That was sound law when the Mercein Case was decided, in 1842. In determining whether the Mercein Case has any binding force to-day, we must have regard for the changed status of a wife in the eyes of the law to-day, as compared with 1842. The status of the wife when the Mercein Case was decided is indicated by the following quotations from the opinion in that case:

"This brings us to a consideration of the legal rights and powers of the relator and his wife in respect to their offspring. These rights and powers, like nearly all others when the claims of husband and wife come in conflict, depend upon a rule too elementary to require the adduction of authority, and too obvious to have been denied in the whole course of this particular controversy, from the hearing before the chancellor in the summer of 1839, * * * through the several hearings before commissioners, in this court, and the Court for the Correction of Errors. The principle is thus stated in 1 Black. Com. 468: 'The very being or legal existence of the woman is suspended during the marriage, or, at least, is incorporated and consolidated into that of the husband.' Their relative power over the person of the child follows as a consequence. * * * 'A man cannot grant anything to his wife, or enter into covenant with her; for the grant would be to suppose her separate existence, and to covenant with her would be only to covenant with himself.' * * * If the husband has a right to transfer the marriage bed to his wife, I deny that he has, therefore, the right still farther to violate his duty by selling his children, with or without it. These he holds under the duty of a personal trust, inalienable even to another who is sui juris; a fortiori to his wife, with whom he can make no contract whatever."

But the world has moved since 1842. It is not to be believed that to-day any enlightened court would subscribe to the statement that:

"The very being or legal existence of the woman is suspended during the marriage, or, at least, is incorporated and consolidated into that of the husband."

By statute and judicial decision it is now well recognized that:

"A wife is now permitted to contract with the freedom of a feme sole, and by the express command of the Legislature she can at last contract, even with her husband, the same as if * * * unmarried, except that they cannot alter or dissolve the marriage, and she cannot release him from his obligation to support her." Winter v. Winter, 191 N. Y. 462, 473, 84 N. E. 382, 386 [16 L. R. A. (N. S.) 710].

The authority of the Mercein Case was inferentially overthrown in Allen v. Affleck, 10 Daly, 509, decided in 1882. Since that time numerous decisions have been rendered upholding and enforcing provisions in separation agreements providing for the payment of money to the wife, not only for her maintenance, but for that of her child. Duryea v. Bliven, 14 N. Y. St. Rep. 881; Greenleaf v. Blakeman, 40 App. Div. 371, 58 N. Y. Supp. 76, affirmed Greenleaf v. Schley, 166 N. Y. 627, 60 N. E. 1111; Muth v. Wuest, 76 App. Div. 332, 78 N. Y. Supp. 431; Duryea v. Bliven, 122 N. Y. 567, 25 N. E. 908; Clark v. Fosdick, 118 N. Y. 7, 22 N. E. 1111, 6 L. R. A. 132, 16 Am. St. Rep. 733.

The right of the father to transfer the custody of his child to his wife, where they have separated, and where there is nothing in the agreement inconsistent with the welfare of the child, is generally recognized by the leading text-book writers and leading cases in other states and in England. Hurd on Habeas Corpus, pp. 540, 541; Church on Habeas Corpus, p. 708; Tyler on Infancy and Coverture, pp. 283, 287; Reeve's Domestic Relations, p. 130; Bishop on Marriage, Divorce and Separation, vol. 2, p. 456; Schouler's Domestic Relations, p. 328; 36 and 37 Vict. c. 12, § 2; Hart v. Hart, 18 Ch. D. 670; Fletcher v. Hickmann, 50 W. Va. 244, 40 S. E. 371, 55 L. R. A. 896, 88 Am. St. Rep. 862; Green v. Campbell, 35 W. Va. 698, 14 S. E. 212, 29 Am. St. Rep. 843; Civ. Code Cal. § 211; State v. Smith, 6 Greenl. (Me.) 462, 20 Am. Dec. 324.

The agreement in question is valid, and its provisions must be observed. It follows that the writ must be sustained, with costs, and the custody of the infant, Templeton Lee, be awarded to the relator, pursuant to the terms of the separation agreement.