(40 App. Div. 371.)

GREENLEAF v. BLAKEMAN et al.

(Supreme Court, Appellate Division, First Department. May 5, 1899.)

1. HUSBAND AND WIFE—SEPARATION AGREEMENTS—CONSIDERATION.
When a husband and wife have separated, a covenant in the agreement of separation by the wife to accept from the husband a certain sum of money in lieu of his obligation of support and maintenance for herself and children, together with a relinquishment of her dower in his estate, and all interest in any property then owned or subsequently acquired by him, with a relinquishment of the right to administer on his estate in case of intestacy, is ample consideration for his covenant to pay to a trustee for her an agreed sum of money for the support of herself and children; and such an agreement will be specifically enforced.

2. SAME—CONSTRUCTION—CERTAINTY.
A covenant in an agreement of separation between husband and wife that the payment to the wife of an agreed sum of money for the support of herself and children "shall be secured, either by bond of sufficient surety, individual or corporate, or by collateral security of suitable character, and in market value not less than $70,000," is not too uncertain to justify a decree to compel the husband to furnish such security.
Van Brunt, P. J., dissenting.

Appeal from special term, New York county.

Action by Thomas Greenleaf, as trustee, against Louis H. Blakeman and Eleanor L. Blakeman. From a judgment entered in favor of plaintiff (56 N. Y. Supp. 76), defendant Louis H. Blakeman appeals. Modified and affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

William H. Hamilton, for appellant.
George Richards, for respondent.

INGRAHAM, J.   The action was brought to specifically enforce an agreement made between Louis H. Blakeman, the appellant, as party of the first part, Eleanor L. Blakeman, his wife, as party of the second part, and the plaintiff, Thomas Greenleaf, as trustee, party of the third part.   The parties of the first and second parts were husband and wife, but before the execution of the agreement they had separated, and were living apart.   The agreement provided that the parties of the first and second parts might live separate and apart, the one from the other; that the wife (party of the second part) was to have the custody of the two children of the marriage; that the party of the first part (the husband) should pay to the party of the second part (the wife), until her death or remarriage, the sum of $3,500 per annum, in equal, quarterly payments, "which sum or sums are and shall be for the use, maintenance, and support of the party of the second part," such payments to be made to the party of the third part as trustee for the party of the second part, and "such payments shall be secured, either by bond of sufficient surety, individual or corporate, or by collateral security of suitable character, and in market value not less than seventy thousand dollars, placed in the hands of the party of the third part, or his successor in trust, within six months from the execution and delivery thereof."   It was further provided that the payment of $3,500 per annum to the party of the second part is and shall be in full satisfaction for her support and maintenance of and from the said party of the first part, "and she shall, and hereby does, release all her claims, present and future, against the said party of the first part, for maintenance and support, and all her dower and right of dower in the real estate of said party of the first part of which he is now seised, or which he may hereafter acquire, and any and all rights, present and future, which she now has, or may hereafter have or acquire, of, in, or to the estate, real and personal, of the party of the first part, under any statute or statutes of distribution or otherwise, and any right of administration, as widow or otherwise, of or upon the estate of the party of the first part in the event of his death"; and the party of the second part binds herself to execute, acknowledge, and deliver any and all deeds of conveyance, releases, and other instruments in writing, sealed or unsealed, which by counsel learned in the law may be advised, and by the other party required, to effectuate and carry out this agreement, or any clause thereof, to its full and true intent, meaning, and purpose; and that the party of the third part "hereby accepts the trust herein imposed upon him, and covenants and agrees to and with the

parties of the first and second parts, and each of them, that he will well and truly pay over to the party of the second part all moneys received by him from the party of the first part to be paid over to her under and pursuant to the provisions of this agreement, and will use reasonable diligence to collect all moneys due hereunder for the benefit of the party of the second part, and upon demand will take such proceedings as may be proper and necessary to enforce the performance of the covenants contained in paragraphs fifth, sixth, and seventh of this agreement"; and the agreement was to bind the parties, their heirs, administrators, and successors. This agreement, having been duly executed and delivered, was in all respects complied with by the wife (the party of the second part); and she subsequently, at the request of the husband, executed a deed releasing her dower in certain of his real estate. The appellant continued to pay the yearly sum required to be paid, but failed to give the security for the payment of such sum required by the third clause of the agreement, and this action was brought by the party of the third part (the trustee) to specifically enforce the covenant as to such security. Judgment was entered in favor of the plaintiff to enforce such covenant, and from that judgment so entered the defendant appeals. The court below found that there was ample consideration for the said agreement; that it was absolutely unequivocal, and was not misunderstood by the defendant Louis H. Blakeman; that the said agreement was not harsh, unconscionable, unreasonable, or oppressive, but was a fair, equitable, and valid agreement; that the covenant of the defendant that the payments to be made for the support of his wife and children should be secured by a bond of sufficient surety, individual or corporate, was not too indefinite or uncertain for specific performance, —and directed judgment specifically enforcing this covenant; the form of the bond to be given by the defendant being annexed to the judgment. The execution of this agreement was preceded by negotiations between the parties, conducted through their respective attorneys, and the correspondence through which such negotiations were carried on was proved upon the trial. From the correspondence it would appear that the attorney for the wife insisted that security should be given, and this question was one of the points in difference between the parties. The attorney for the appellant, in answer to a demand for this security, with a suggestion that the husband should give an assignment of his interest in his father's estate, to be held by the trustee, as such security, replied:

"As to security, I have set forth Mr. Blakeman's views on that point in the agreement. Ample security shall be given. I am willing to hear you on the subject of sufficiency, but, as to its form, that must be left to Mr. Blakeman. He may require six months, or provide it. And, when the agreement is signed, he will set about providing it, but not before."

In answer to this, the counsel for the wife insisted that some suitable security should be given, "and not a mere indefinite promise to give security, which very likely could not be enforced, even by a suit for specific performance." In reply, Mr. Meyer wrote:

"If you think your client's interest will be safer by having a provision in the agreement that such security will be given within six months from the

date of the execution of the agreement, otherwise the agreement to be void, I would assent to that, and meanwhile pay over to the trustee two installments of the proposed allowance. I have every reason to believe that Mr. B. will provide the surety with promptness, after execution of the agreement, and that the surety will be the Lawyers' Surety Company."

Subsequent to this correspondence, at an interview between the attorneys, the form of the proposed agreement was settled, and the agreement in its present form was executed. It is apparent that it was the intention of both parties that the defendant should give the security. The whole agreement, which involved the substantial abandonment of an action for separation commenced by the wife against the husband, and for the maintenance of the wife and the children of the marriage, was based upon this covenant to give security. The attorney for the husband assures the attorney for the wife that he (the husband) will give such security, and, while objecting to any present assignment of property to secure the payments, himself proposes to insert a covenant that such security will be given within six months. We could hardly assume that this appellant, when giving this assurance that the security would be given, intended to violate this covenant, basing such intended violation upon an observation made in a letter by the wife's attorney as to a doubt about the power of a court to specifically enforce such an agreement. Such a supposition, which has been urged upon us, would indicate a deliberate fraud on his part, and would not entitle him to the favorable consideration of a court of equity. There are strong equities in favor of the wife. The husband has specifically agreed to give such security. Such an agreement was made after prolonged negotiations as to the form of the covenant providing for such security. The attorney for the wife was assured that the husband would give such security, and intended in good faith to carry out the provisions of this covenant; and, unless some inflexible rule of law prevents a court of equity from enforcing it, this appellant should be compelled to do what he agreed to do, and especially where he has, since the agreement, required the other party to the agreement to relinquish her right of dower in his property, and to comply with the other provisions of the agreement, which demand she has complied with. Common honesty requires that this appellant should comply with the agreement thus formally made on his part, the benefits of which he has received. The law recognizes the obligation upon the husband and father to provide for the support of his wife and children, and, when a husband and wife have separated and are living apart, the covenant on behalf of the wife to accept from the husband a certain sum of money in lieu of this obligation of support and maintenance for herself and her children, together with a relinquishment by the wife of her dower in her husband's estate, and all interest in any property which he then owns or should subsequently acquire, with a relinquishment of the right to administer upon his estate in case of intestacy, is ample consideration for the promise of the husband to pay the wife the sum of money that has been agreed upon for the support and maintenance of herself and her children. There is nothing to show that the amount agreed upon was in any way excessive,

or that the agreement itself was not a perfectly fair one.   The law recognizes the binding force of such an agreement and will enforce it. Galusha v. Galusha, 116 N. Y. 635, 22 N. E. 1114.   The cases cited by counsel for appellant in which it seems to have been intimated that there must be some consideration passing from a trustee who was to enforce such agreement, before a court of equity would specifically enforce it, were based upon the law as it then existed,—that any agreement between a husband and wife was void, and consequently no consideration passing from the wife to the husband was sufficient to authorize a court to decree the specific performance of a covenant to a trustee under such an agreement.   As this rule of law preventing a direct agreement between a husband and wife has been abrogated by statute (chapter 381, Laws 1884, as amended by chapter 594, Laws 1892), the reason upon which these decisions are based no longer exists, and there is now no reason why a covenant between a husband and wife which provides for the wife's future support and maintenance should not be specifically enforced.   That this agreement on the part of the wife to relinquish her dower interest in the husband's estate was binding upon the parties was recognized by both; the husband demanding a compliance with the covenant on the part of the wife, and in that the wife acquiescing.

The second and more serious objection taken by the appellant to this judgment is that the covenant that "such payment shall be secured, either by bond of sufficient surety, individual or corporate, or by collateral security of suitable character," is too uncertain and indefinite to justify a decree for specific performance.   Many cases are cited by the appellant in which courts have refused to specifically enforce agreements on the ground that they were too indefinite or uncertain to be specifically performed.   The rule is stated by Andrews, J., in Stanton v. Miller, 58 N. Y. 200, as follows:

"It is an elementary principle governing courts of equity in the exercise of this jurisdiction that a contract will not be specifically enforced unless it is certain in its terms, or can be made certain by reference to such extrinsic facts as may, within the rules of law, be referred to, to ascertain its meaning."

An examination of the many cases cited in which courts of equity have refused to specifically enforce contracts on the ground that they were too indefinite and uncertain would be of little use in the determination of this question.   The general rule is clearly expressed, and each case must rest upon the terms of the agreement sought to be specifically enforced.   It must be reasonably certain as to its subject-matter, its stipulations, its purposes, its parties, and the circumstances under which it was made.   Stokes v. Stokes, 148 N. Y. 708, 43 N. E. 211.   We think this covenant was sufficiently certain to justify the court in specifically enforcing it.

The objection that the covenant was in the alternative (the appellant being given an option as to the form in which the security should be supplied,—whether by a bond of sufficient surety, individual or corporate, or by the deposit of securities of a market value of not less than $70,000, to be placed in the hands of the plaintiff, as trustee) would not prevent the court from specifically enforcing the covenant. As was said in Smith v. Rector, etc., 107 N. Y. 610, 14 N. E. 825, where

the agreement was to pay the value of the building, or to grant a new lease:

"The contract binds the defendant either to pay such value, or execute a new lease. It is bound to perform its contract by availing itself of one or the other of these alternatives."

So, in this case, the defendant had the option to avail himself of the alternative as to the form of the security to be given,—either by giving a bond, or by the deposit of securities of the market value of $70,000. He was bound to furnish such security in one or the other of these forms. It is said, however, that this covenant is rendered so indefinite and uncertain that specific performance will not be decreed, because the security to be furnished is a bond of sufficient surety, or collateral security of a suitable character, and that as there is no provision in the agreement as to who shall determine as to the sufficiency of the surety, or the suitable character of the securities to be delivered to the trustee, the agreement is thus made so indefinite as to be incapable of being specifically enforced in equity. The covenant is that the appellant will give a bond of sufficient surety to secure the payment of the amount which by the agreement he covenants to pay. It is quite clear as to what was intended by the parties. It is that a bond was to be given which would secure to the wife the payment of the sum that the agreement stipulated should be paid to her, or for her benefit. The amount that was to be paid each year was fixed by the agreement, and the payment of the sum thus fixed was to be secured by the bond of an individual or corporation who would secure to the wife the payment of the amount to be paid to her. To that extent the covenant is explicit. The appellant has agreed to furnish such a bond, and he has agreed that such bond shall be executed by a sufficient surety (i. e. a surety which is sufficient to insure to the wife the payment of this sum). Whether or not the surety proposed by the defendant is sufficient, is a question of fact, that can be readily determined by considering the age of the wife, the amount of the payment that is to be made to her, with her probability of life, and the various circumstances that exist in relation to the sum of money to be paid, and the probable duration at which, under this agreement, such payment will be required to be made. Thus, the meaning of this phrase, "with sufficient surety," can be made definite and certain as to the sufficiency of the surety by reference to such extrinsic facts as may be shown, and which bring the case expressly within the rule as stated by Judge Andrews in the case of Stanton v. Miller, supra, —that "a contract will not be specifically enforced unless it is certain in its terms, or can be made certain by reference to such extrinsic facts as may, within the rules of law, be referred to, to ascertain its meaning." The cases in which the courts have refused to decree specific performance of a contract on the ground that it was too indefinite and uncertain, because of a failure to specify to whom, or to what amount, property is to be delivered or mortgages created, or when it was impossible to ascertain definitely to whom, or to what amount, the conveyance or security was to be given, do not apply, as by this contract the appellant was to pay to the plaintiff a definite sum of money in each year, and he was to give a bond to secure that

payment.    The amount of the bond or the sufficiency of the surety
could be ascertained by the proof of extrinsic facts which a court
specifically enforcing the agreement would require; and, these facts
being proved, the sufficiency of the surety could be easily and accu-
rately ascertained.    In the alternative, the appellant was to secure
the payment of this money by collateral security of suitable character,
and of the market value of not less than $70,000.    It seems to me that
this covenant was sufficiently definite.    The obligation to deliver
suitable securities as collateral security clearly means securities of
the character that are usually provided to secure obligations of this
kind, such as bonds and mortgages, corporate bonds or corporate
stocks,—such securities as have a definite market value, and which
are sufficient to secure the payment of such an obligation.    The mar-
ket value of the securities to be furnished is fixed, and the person
with whom they are to be deposited is specified.    In relation to this
covenant, it is also possible, by the proof of extrinsic facts, to make
certain the provision of the contract.

The appellant insists that he was entitled to have the judgment
provide that he should either furnish the bond with sufficient surety,
or suitable securities to the market value of $70,000, or, as stated by
counsel for appellant, that, "if specific performance in this case should
be decreed at all, it would have to be in the alternative"; and we
agree with the appellant in this respect.    We think, therefore, that
the judgment should be modified by requiring the appellant to specif-
ically perform his covenant that the payment of the sum of $3,500
per annum, in equal quarterly payments, should be secured by a bond
of sufficient security, individual or corporate, or by collateral security
of suitable character, and in market value not less than $70,000, placed
in the hands of the plaintiff, or his successor in trust; that the said
defendant Louis H. Blakeman be directed to execute and deliver,
within five days after the service of a copy of the judgment herein,
with notice of entry thereof upon the said defendant Louis H. Blake-
man, or his attorneys, a bond running to the plaintiff, as trustee as
aforesaid, and to his successor or successors in trust, with individual
or corporate surety, in the form of Schedule A or Schedule B, annexed
to the judgment, or, in the alternative, to deliver to the plaintiff, as
trustee, securities of the market value of not less than $70,000.    The
judgment should further provide that, upon compliance by the defend-
ant with the provisions of this decree, if the plaintiff should object
to the sufficiency of the surety upon the bond, or to the character or
value of the securities furnished, such question arising upon such ob-
jection shall be determined by the court in a proceeding taken at the
foot of this judgment, and that such judgment, so modified, should
be affirmed, without costs of this appeal.    All concur, except VAN
BRUNT, P. J., dissenting.

VAN BRUNT, P. J.    I dissent.    It seems to me plain that the in-
tention of the parties was that, at the option of Mrs. Blakeman, the
agreement might be ended if security was not given.    I think, fur-
ther, that the condition was too vague to be enforced.