THE STATE OF KANSAS v. JOHN C. MOORE.

No. 16,275.

SYLLABUS BY THE COURT.

1. EVIDENCE — *Physical Objects.* Generally physical objects which constitute a portion of a transaction or which serve to unfold or explain it may be exhibited in evidence whenever the transaction is under judicial investigation.

2. MURDER—*Garments Worn by Deceased—Evidence.* Appellant was tried for murder in the first degree for shooting his wife with fatal effect. The jacket she wore at the time she was shot was introduced in evidence. It was pierced in the back by two bullet holes, and the lining was stained with blood. Eye-witnesses described the shooting, and a physician described the location, direction and extent of the wounds on the body of the deceased. *Held,* the garment was properly admitted in evidence.

3. ——— *Same.* When the jacket was offered in evidence counsel for appellant stated that the defense would offer no evidence as to the shooting. *Held,* insufficient to deprive the state of the right to the evidence afforded by the jacket.

4. ——— *Same.* After the jacket was introduced in evidence it was permitted to remain, without objection or request for its removal, in full view of the jury for five or six days, to the end of the trial. *Held,* not error.

The State v. Moore.

5. EVIDENCE—*Physical Objects Permitted to Remain in View—Attempt to Prejudice the Jury.* The time when and the manner in which such objects may be presented and the length of time they shall remain on exhibition are subject to regulation by the trial court, and the exercise of discretion in this respect will be approved except in cases of abuse.

6. —— *Same.* Spectacular displays of physical objects germane to the transaction under investigation, cunningly devised to arouse passion or to excite prejudicial emotions on the part of the jury, should be thwarted or promptly suppressed; but legitimate evidence can not be excluded merely because it is grewsome and may tend to move the jury's feelings.

7. MURDER—*Insanity—Partial or General—Instructions.* If the trial court see fit it may recognize monomania, or so-called partial as distinguished from general insanity, when instructing the jury in a criminal case involving that form of mental derangement as a defense, but it is not imperative that it should do so; and if the proper tests of criminal responsibility for the act in question be stated in the instructions the substantial rights of the defendant are sufficiently protected.

Appeal from Cowley district court; CARROLL L. SWARTS, judge. Opinion filed May 8, 1909. Affirmed.

*Fred S. Jackson,* attorney-general, and *Ed. J. Fleming,* county attorney, for The State; *A. M. Jackson,* and *A. L. Noble,* of counsel.

*John W. Adams, George W. Adams,* and *L. C. Brown,* for the appellant.

The opinion of the court was delivered by

BURCH, J.: On Sunday, December 27, 1906, appellant waylaid his wife as she was returning from church, shot her twice through the body and killed her on a public street in the city of Arkansas City. He was convicted of murder in the first degree, but the judgment was reversed because of the admission of irrelevant and prejudicial evidence. (*The State v. Moore,* 77 Kan. 736.) He was tried a second time, was again convicted of murder in the first degree, and again appeals.

It is argued that error was committed in permitting the county attorney to present in his opening statement, and afterward to prove, the relations existing between appellant and his wife, and his conduct toward her, for a considerable period of time before the homicide. Perhaps some unnecessary trouble was taken to exploit the subject; but the plea was "not guilty," motive, malice, deliberation and premeditation were all in issue, and upon consideration of the whole case nothing prejudicial to appellant's substantial rights appears.

Error is assigned because the jacket which the deceased wore when she was shot was introduced in evidence. It was fully identified, was pierced in the back by two bullet holes, and its lining was stained with blood. When the jacket was offered counsel for appellant sought to forestall its exhibition to the jury by the statement to the court that no evidence would be introduced on the part of the defense concerning the shooting. In the case of *State v. Jones*, 89 Iowa, 182, the syllabus reads:

"The fact that the defendant, in a prosecution for homicide, admits the killing, is not a ground for the exclusion of the weapon, with which the crime was committed, from evidence."

This is true for two reasons. The bare admission of the killing subtracts little from the issues, and it may be very important for the state, with the burden resting upon it to establish all the charges of the indictment or information beyond a reasonable doubt, to make its own case in its own way; and the evidence may be very valuable in illustrating or establishing other material facts. Beyond this, the statement under consideration was too carefully guarded. It did not admit the shooting or any other fact connected with the homicide, not even that appellant's wife was dead. Its import was merely that whatever the state proved relating to the shooting would not be contradicted, and the burden still

rested on the state to prove every fact alleged in the information beyond a reasonable doubt.

Several witnesses who were present described all that occurred at the shooting, and a physician who examined the body of the deceased after death described the location, extent and effect of the wounds inflicted. Therefore it is argued that the evidence afforded by the jacket was wholly immaterial and unnecessary. The jacket supplied competent proof of relevant and material facts, and it is not for appellant to say how much proper evidence shall be produced against him. Especially is this true when he is standing upon all his rights under a general plea of not guilty. Perhaps all the eye-witnesses need not have been examined, but appellant had no right to insist that the state be limited to one or two or three of them. Perhaps the physician's testimony might have been confined to matters not proved by the jacket, but it could not be rejected because of the duplication. The inanimate garment told clearly and truthfully the story of a woman shot twice in the back, and hence, by legitimate inference, maliciously, wilfully, deliberately, premeditatedly, and without justification or excuse. It had a rightful place among the accusing witnesses, none of whom could be set aside at appellant's option because they were numerous.

It is argued that the introduction in evidence of the dead woman's bloody jacket destroyed the mental poise of the jury by riveting their minds upon a scene of carnage to the exclusion of any calm consideration of appellant's sanity, the only matter finally disputed by way of defense. The state rested under the necessity of establishing a tragedy involving the violent death of a human being from mortal wounds deliberately inflicted with malice aforethought—a thing most likely to include some blood along with the wickedness; perhaps, too, the terrifying report of pistol-shots in a peaceful street on a Sunday morning just after church, the piteous appeals for life and the agonized death screams

of a defenseless woman as she is being shot down, and other shocking things. Such a subject is never a nice one to investigate. Any of the details have a decided tendency to horrify and to appall; but a court can not arrange for lively music to keep the jury cheerful while the state's case in a murder trial is being presented, and grewsome evidence can not be suppressed merely because it may strongly tend to agitate the jury's feelings.

In the case of *Turner v. State,* 89 Tenn. 547, a section of the murdered man's ribs and vertebra was introduced in evidence. Objection was made because the object was calculated to inspire the jury with such horror as to influence their verdict. The purpose of the evidence was to show the direction and lodgement of the bullet, and it was held to be clearly admissible. In the case of *The State v. Wieners,* 66 Mo. 13, the bones of the vertebral column of the deceased were exhibited to the jury. The killing was admitted, and the coroner had described the precise location of the wound and the direction of the bullet. The court said:

"It served to show to the jury the attitudes and relative positions of the parties when the shot was fired. It was not an unnecessary parade of the bones of the dead man to excite prejudice against his slayer, but was legitimate and proper evidence, and a party can not, upon the ground that it may harrow up feelings of indignation against him in the breasts of the jury, have competent evidence excluded from their consideration." (Page 29.)

Innumerable cases might be quoted to the same effect. Generally physical objects which constitute a portion of a transaction or which serve to unfold or explain it may be exhibited in evidence, if properly identified, whenever the transaction is under judicial investigation.

Appellant has cited some cases in which it seems to be indicated that the exhibition of bloody garments serves no purpose when the condition and location of wounds

made through them have been described by witnesses. This court prefers to abide by the well-established rule that ordinarily whatever the jury may learn through the ear from descriptions given by witnesses they may learn directly through the eye from the objects described. (*The State v. Stair*, 87 Mo. 268, 273.) Of course, spectacular exhibitions may be framed for· the purpose of arousing prejudicial emotions, and all such improprieties should be thwarted or promptly suppressed. The production of real evidence should not be permitted to exaggerate, and should not be allowed, through cunning presentation, to stir up passion or unduly excite sympathy or pity, and so lead the jury to act upon sentiment instead of proof. But the proceeding is always under the control of the trial judge, who has authority to confine the use of such evidence to proper purposes and to regulate the time, manner and extent of its presentation; and his discretion will not be interfered with unless abused with prejudicial consequences.

The chief objection to the exhibition of weapons, wounds, bloody clothing and the like is that the jury may be led to associate the accused with the atrocity under investigation without sufficient proof. Professor Wigmore disposes of this objection in the following way:

"No doubt such an effect may occasionally and in an extreme case be produced; and no doubt the trial court has a discretion to prevent the abuse of the process. But, in the vast majority of instances where such objection is made, it is frivolous, and there is no ground for apprehension. Accordingly, such objections have almost invariably been repudiated by the courts. [Citing many cases in note.]" (2 Wig. Ev. § 1157.)

After the jacket was introduced in evidence it was allowed to remain in the presence of the jury to the end of the trial, which continued for some five or six days, and appellant complains of this fact. Whether the exhibition of the article was prolonged through

forgetfulness or design does not appear, but appellant did not deem it of sufficient consequence to ask for its removal, and hence must be deemed to have consented to its remaining on view. If this were not true the matter is disposed of in the following quotation from the opinion in the case of *Painter v. The People,* 147 Ill. 444, in which the bed, mattress, sheets, pillows and other clothing of the bed in the room where the deceased was murdered, and other physical objects, were displayed before the jury during the trial:

"But the principal ground of complaint does not seem to be the admission in evidence of the physical objects in question, but the action of the court in permitting the state's attorney to place those objects in the presence and view of the jury at the beginning of the trial, and in keeping them there while the trial lasted. It is not claimed that they were not sufficiently identified, and there was evidence showing, at least *prima facie,* that when placed in the court-room they were in the same condition in which they were on the night of the murder. We are of the opinion that the time and manner in which objects of this character shall be displayed in the presence of the jury is a matter wholly within the sound discretion of the court, and we are unable to see anything in the record sufficient to warrant us in holding that such discretion was abused in the present case." (Page 467.)

The defense was what counsel calls partial insanity; that is, it was claimed the appellant was generally of sound mind but was insane upon the subject of his marital relations. It may be assumed that there was evidence supporting the defense. The following instruction was requested and refused:

"The jury are instructed that the law recognizes partial as well as general insanity, that a person may be insane on one or more subjects and sane as to all others, or he may be laboring under a mental delusion upon some particular matter and generally sane on all other subjects. If a person is laboring under a partial or temporary insanity and does not understand at the time of the commission of a homicide the nature, char-

acter and consequence of his acts, and has not the mental capacity to know that they are wrong, he would not be responsible for his·act or acts."

The court gave the instruction upon insanity approved in *The State v. Arnold,* 79 Kan. 533. Appellant assigns error upon the refusal to give the instruction requested. As indicated in the Arnold case, the court may properly recognize monomania when instructing the jury in a case presenting that form of mental derangement, but it is not obliged to do so. To destroy criminality, monomania or so-called partial as distinguished from general insanity must dethrone the reason and judgment to the extent the law requires with reference to the act which is the subject of prosecution. The verdict must always be determined by the quality of that act. That act is the product of insanity, as the law defines that term, or it is not. The person committing it is either sane or insane for all purposes of the verdict and judgment. It is true, as the Arnold case affirms, that the law recognizes every form of insanity or delusion which renders an accused mentally incapable of knowing the nature and quality of the act done, and that it was wrong; but it is also true, as the same case affirms, that the law recognizes no form of insanity, although the mental faculties may be disordered or deranged, which will furnish one immunity from punishment for an act declared by law to be criminal, so long as the person committing the act had the capacity to know what he was doing and the power to know that his act was wrong. Therefore the form or species of insanity with which it is claimed a defendant was affected is not, in the last analysis, material, and need not be discriminated in the instructions; and if the proper test of criminal responsibility for the act in question be given the substantial rights of the defendant have been protected. In some cases it might be helpful and in others it might be confusing to the jury for the court to open up the subject of the various forms in which mental

derangement may be manifested. The refusal to do so can scarcely ever be erroneous if otherwise full and proper instructions be given.

The judgment of the district court is affirmed.