## PRUDENTIAL INS. CO. OF AMERICA v. FAULKNER.

No. 839.

Circuit Court of Appeals, Tenth Circuit.

Jan. 12, 1934.

Rehearing Denied Feb. 28, 1934.

Grant H. Bagley, of Salt Lake City, Utah (Waldemar Van Cott, P. T. Farnsworth, Jr., W. Q. Van Cott, and B. R. Howell, all of Salt Lake City, Utah, on the brief), for appellant.

A. H. Hougaard and B. P. Leverich, both of Salt Lake City, Utah, for appellee.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

The parties will be denominated as they were in the trial court. Defendant issued a group insurance policy insuring certain of its employees, including plaintiff. The policy provides, among other things, that if any person insured under its terms shall become totally and permanently disabled, either physically or mentally, from any cause whatsoever to such an extent that he is rendered wholly, continuously, and permanently unable to engage in any occupation or perform any work for compensation during the remainder of his life, the company will waive further payment of premiums so far as such person is concerned and will pay him the amount of the insurance either in one sum six months after receipt of proof of such disability, or in sixty monthly installments in the sum of $17.95 for each $1,000 specified, the first installment to be paid immediately after receipt of proof of disability, and subsequent ones on the first of each month thereafter.

Pursuant to the provisions contained in such policy, three certificates of insurance were issued to plaintiff while he was employed by defendant, the first two being for $2,000 each, and the third being for $4,000. Each of them provides that if plaintiff becomes totally and permanently disabled while the policy is in force and effect, the company will pay him the amount specified either in one sum or in monthly installments conforming to the group policy.

Plaintiff sued in three causes of action, each cause seeking to recover on one of the certificates. He alleged that the certificates were in force and effect; that all premiums thereon had been paid; that he was an employee of the company; that he was under the age of sixty years; that he suffered from chronic organic heart disease, chronic myocarditis with angina pectoris, chronic bronchitis, and severe nervous instability; that

resulting from such disability he was then and had been for more than six months preceding the institution of the suit totally and permanently disabled; that he would be so throughout the remainder of his life; that proof of such impairment had been furnished and payment refused. Defendant denied the several allegations of disability, and in addition thereto it alleged that the group insurance policy expressly provides that it shall cease upon termination of employment of any employee; that plaintiff's employment terminated on April 12, 1932; and that the insurance ceased so far as it affected him on that date. The jury returned a verdict as follows: "We, the Jury, duly empaneled and sworn in the above entitled cause find the issues joined in favor of the plaintiff and against the defendant in the sum of $8000.00, which said total sum, at the option of the defendant, shall be paid on or before six months after the ———— day of August, 1932, or in sixty monthly installments of $143.60 on the first of each and every month beginning with the month of August, 1932, of which there are four installments now unpaid—in the sum of $574.40."

Judgment was rendered for plaintiff. After reciting formal matters and after quoting the verdict, it concludes with these provisions:

"And the defendant having requested the court to give the following instructions to the jury, 'If under the instructions given you you find a verdict for the plaintiff, you will assess his damages in the sum of $143.60, with interest thereon from August 3, 1932, at the rate of eight per cent per annum,' and having elected thereby to exercise its option to pay the amount of the aforesaid judgment in monthly installments.

"Wherefore, it is ordered and adjudged by the court that the plaintiff, Robert Faulkner, recover of and from the defendant, Prudential Insurance Company of America, a corporation, the sum of $8000.00 in sixty monthly installments of $143.60 payable on the first day of each and every month, commencing with the 1st day of August, 1932, of which there are four installments now unpaid in the amount of $574.40; and that the plaintiff have and recover judgment against said defendant for his costs herein incurred to be taxed upon a verified cost bill, and that he have execution therefor."

Defendant perfected this appeal in seasonable time and in proper mode.

The first assignment of error argued relates to the admission of plaintiff's testimo-

ny that he served in the World War; that he participated for three days in the battle at Argonne; that it was a furious battle; that the noise from explosion of shells was very great; that a shell exploded near him; that it threw him about fifty feet; that he was rendered unconscious; that he lay in mud and water until he was rescued by an officer; and that his fingers were blown off. The only objection interposed to the introduction of such testimony was that it was immaterial. Plaintiff's allegation of nervous instability was a material one and the testimony was pertinent to establish it. It requires no argument to demonstrate that an experience of that unusual character is reasonably calculated to affect one's nervous system, and it is easily conceivable that the effect of such an ordeal may manifest itself in different ways years afterwards. A general objection that tendered testimony is immaterial is not sufficiently definite to direct the court's attention to specific grounds of inadmissibility. Obviously, the objection interposed was untenable.

■ It is urged here that the testimony was offered for the plain purpose of enlisting the sympathy of the jury and that it inflamed their minds. That is a new and different ground of objection not urged in the trial court. It is presented here for the first time. For that reason alone the contention cannot be sustained. But aside from that consideration and assuming that such an objection was seasonably made during the progress of the trial, it is without merit. The true test of admissibility of testimony in a situation similar to the one presented here is its relevancy and materiality. Testimony pertinent to a material issue will not be excluded merely because it may have a prejudicial effect on the opposing party or may arouse the jury. Hussmann v. Leavell & Sherman (Tex. Civ. App.) 20 S.W.(2d) 829; Pease v. Smith, 61 N. Y. 477; Vicksburg & J. R. Ry. Co. v. Patton, 31 Miss. 156, 66 Am. Dec. 552; Hiller v. Village of Sharon Springs, 28 Hun (N. Y.) 344; Orscheln v. Scott, 90 Mo. App. 352; Carrico v. West Virginia Central I. P. Ry. Co., 39 W. Va. 86, 19 S. E. 157, 24 L. R. A. 50; State v. Moore, 80 Kan. 232, 102 P. 475. The evidence, being relevant to a material issue, was properly admitted although it may have stirred the sympathy of the jury in favor of plaintiff. From a careful and painstaking examination of the entire record we do not believe it unduly upset the balance between the parties.

■ It is contended that the court should have instructed a verdict for defendant be-cause the evidence fails to show that plaintiff became totally and permanently disabled within the meaning of the policy while it was in force. Plaintiff was employed by defendant from May, 1923, to February, 1932. His duties consisted of soliciting insurance and collecting premiums on insurance policies. Dr. Clawson, a qualified and practicing physician, testified that he examined plaintiff several times between April, 1931, and October, 1932; that on each occasion he found the existence of angina pectoris, mitral insufficiency of the heart muscle, chronic bronchitis, and nervous instability. Dr. Anderson examined plaintiff in April, 1931, June, 1932, and October, 1932. Dr. Stevens was called to his home and examined him in January, 1931. Each of them testified to virtually the same condition as that described by Dr. Clawson. Plaintiff, his wife, and four other witnesses each testified that beginning in 1931 he suffered severe attacks of pain; that he was compelled to lie down for two or three hours at a time when thus stricken; that he placed his hand over his heart; that he perspired heavily and looked pale; that when stricken away from home, it was necessary to carry him home and to aid him to enter the residence. Plaintiff testified in detail with respect to the extreme pain in the upper region of the heart; that it traveled upward and extended to his left shoulder and left arm; that it felt as though the heart was being penetrated with a sharp knife; that the attacks recurred sometimes once a week and sometimes once in two weeks; and that he was extremely weak and sore for several days after each attack. The testimony clearly justified the court in submitting the issue to the jury and it abundantly sustains the finding of total and permanent disability within the purview of the policy.

■ Defendant challenges the verdict and judgment on several grounds. It asserts that the verdict is ambiguous, uncertain, and beyond the issues raised by the pleadings; that the judgment is indefinite, ambiguous, inconsistent, not supported by the pleadings or verdict, and beyond the jurisdiction of the court. It also urges that the court erred in refusing to instruct the jury that its liability was limited to $143.60, that being the amount of one monthly installment. The several contentions emanate from the alternative provision in the insurance contract for payment either in one sum or in installments, and may be disposed of together. Under the terms of the policy, defendant was obligated to pay plaintiff either in one sum or in installments

if he became totally and permanently disabled under the age of sixty years and while employed by defendant. He became disabled at the time and in the manner he asserts. The jury so found and that finding rests upon substantial evidence. Defendant had the right to elect between the two methods of payment. If the lump-sum mode were selected, payment was to be made six months after receipt of proof of disability, and if the installment plan were chosen, the first payment was to be made immediately upon receipt of such proof and monthly thereafter. It wrongfully refused to compensate him in either method, although proof of disability, subsequently sustained by the jury, was submitted to it, and the time authorized by either plan has long since expired. Such refusal constituted a breach of the contract—a repudiation of an obligation enjoined by its provisions. The election between the two methods is a privilege to be exercised by the insurance company when it admits liability, not after it has repudiated and resisted unavailingly. It is not a right coexistent with denial of liability in any form after the specified time for payment has expired. One who repudiates his obligation under a contract cannot thereafter exercise an election contained in its provisions. Having assumed and still maintaining that attitude, the company waived its right to elect between the alternative methods of payment and thereupon became liable for the full amount in one sum.

The contract reviewed in the early case of Choice v. Moseley, 1 Bailey (S. C.) 136, 19 Am. Dec. 661, provided that it should be discharged on or before a specified day through payment of money or by delivery of a horse. The obligor sought to discharge it after that date by the latter method. The court held that his right of election could not be exercised subsequent to the specified time. That case was cited with approval in an excellent statement of the doctrine made by Hon. D. Lawrence Groner, then Commissioner, afterwards Judge of the United States District Court in Virginia, and now a member of the Court of Appeals of the District of Columbia, in Grace & Co. v. Luckenbach S. S. Co. (D. C.) 258 F. 49, 53. It was said: "In order to apply these general principles to the facts as shown by the evidence at hand, the first question which arises is the amount of tonnage as to which default was made. The contract, as has been repeatedly shown, provided specifically that the steamship company should furnish to Grace & Co. freight room for 75,000 tons; but it is insisted by the steamship company that, since this clause of

the contract contained an option to it to reduce this amount 10 per cent., it was in fact liable only for the carriage of 67,500 tons, less the amount actually carried. In other words, it now insists that after its breach of contract it has the right to exercise the option, and that, instead of 75,000 tons of nitrate, it may and does elect to be bound only to the lesser extent. There is, I think, no question that, if the contract had not been violated, the steamship company could have claimed fulfillment of its obligation when and after it had delivered freight room for 67,- 500 tons, but another and different question arises under the circumstances here. During the period of its recognition of the contract, confessedly it made no specific election. If there were nothing more in the case, I should unhesitatingly conclude that the status of the contract was at the time of its breach identical as at the time it was made, for I take it that the rule is very clear that, when one contracts in the alternative to do one of two things within a given time, he has until the time is past the right to elect which of them he will perform, but, if he suffers the time to elapse without performing either, his contract is broken and his right to elect is lost." As disclosed by the opinion in that case, the District Court approved and adopted the report of the Commissioner, as to both reason and conclusion. The Circuit Court of Appeals likewise adopted it with respect to the measure of damages and the statement just quoted entered into that question. Luckenbach S. S. Co. v. W. R. Grace & Co., 267 F. 676. Certiorari was denied. 254 U. S. 644, 41 S. Ct. 14, 65 L. Ed. 454. The reason supporting the rule is so well stated that nothing need be added.

The general principle thus declared has been applied in cases where the election related to alternative methods for the payment of disability insurance, that is to say, between a lump sum and installments. In Milburn v. Royal Union Mutual Life Ins. Co., 209 Mo. App. 228, 234 S. W. 378, 381, the insurance policy was for $6,000 payable in two hundred and forty equal installments of $25 each. The company denied liability for $6,000 and contended that by reason of nonpayment of premium it was liable for only $428. The court held that it was liable for the full amount; that having thus denied liability and having defaulted in some of the monthly installments, it should be paid in a lump sum. The court said:

"It is well settled that the law frowns upon a multiplicity of cases where one action will suffice. Defendant's position that in the instant case the judgment should have

been rendered, in any event, only for the installments then due, is contrary to this well-known principle of law. Plaintiff cites Knisely v. Leathe, 256 Mo. 341, 166 S. W. 257, in support of his contention that the law of this state is well settled that when defendant failed to perform its contract and defaulted, all the installments thereby became due and payable.

"We think this is good law and applies in this case. This is a suit on contract, and the principle that, defendant being in default in making payments as prescribed in the contract, the full amount became due and payable, is controlling. This principle is so fundamental that citations are unnecessary."

Travelers' Insurance Co. v. Turner, 239 Ky. 191, 39 S.W.(2d) 216, 219, involved a group insurance contract containing provisions quite akin to those under consideration here. There, the insurance company denied liability—just as was done here—asserting that the employee did not become totally and permanently disabled while employed by the company carrying such insurance. The jury found for plaintiff. The insurance company then contended that it had the right to make payment in installments. The court rejected that contention. In doing so, it said: "The reason for the rule of these cases is that the elections concerning the mode and time of payment reserved to the insurer in its policy of insurance are obviously meant for its protection where it acknowledges liability, but, where it repudiates liability, it at the same time waives all of its elections to pay such repudiated liability."

That doctrine was reaffirmed in the subsequent case of Hancock Mut. Life Insurance Co. v. Cave, 240 Ky. 56, 40 S.W.(2d) 1004, 1006, likewise involving a group policy quite similar to the one under consideration here. After denying liability and being defeated in that contention, the insurance company asserted its right to pay by installments. The court said: "It is the settled rule that denial of liability waives the option to pay in installments, even under a contract of that character, and it necessarily follows that such conduct would operate as a waiver of a right to have a third party fix the amount of the installments. The court did not err in rendering a judgment for the full amount due the plaintiff."

The pertinent portion of the policy under consideration in Travelers' Protective Ass'n v. Stephens, 185 Ark. 660, 49 S.W.(2d) 364, 368, provided for payment of $25 per week for a period not exceeding one hundred and four weeks if the insured became totally disabled. Suit was instituted and judgment rendered during that period. The company there, as here, defended on the ground that there was no permanent disability and consequently no liability. Plaintiff recovered for the full amount; that is to say, for the one hundred and four weeks. The court said: "It is strongly insisted by the defendant that the court erred in allowing the plaintiff to recover for total disability for 104 consecutive weeks, as provided in the policy, when the trial of the case took place within a shorter period of time. Defendant's contention now is that it was entitled to a reduction of the amount recovered to the value at the time the trial was had. We do not agree with defendant in this contention. The defendant denied that it was liable to the plaintiff in any amount under the terms of the policy. It did not offer to pay him the weekly indemnity for total disability as long as such disability should continue. It sought to defeat his claim altogether. The jury only allowed the plaintiff to recover for the period of time provided for in the policy. In railroad damage cases, recovery for permanent disability is allowed for a period of time according to the life expectancy of the plaintiff shown by mortality tables prepared by insurance companies. In the case at bar defendant was only required to pay for the time it agreed to do so in its contract of insurance."

It has been held that upon breach of a contract of insurance payable in future installments, the insured may recover damages consequent upon such breach. The recovery in such circumstances is the present value of the installments, past and future, based upon the specified rate of payment during the provided period, or throughout the life expectancy of the insured, as the case may be. Metropolitan Life Ins. Co. v. Day, 145 Ga. 425, 89 S. E. 576; National Life & Accident Ins. Co. v. Whitfield, 186 Ark. 198, 53 S.W.(2d) 10; Sun Life Assur. Co. v. Coker (Ark.) 61 S. W.(2d) 447. One of the leading cases falling in this class is Federal Life Insurance Co. v. Rascoe (C. C. A. 6) 12 F. (2d) 693, 696, in which Milburn v. Royal Union Mutual Life Ins. Co., supra, was cited with approval. There plaintiff sought recovery upon a policy which obligated the insurance company to pay her $25 per week so long as she suffered total disability from accidental injury sustained while a passenger on a common carrier for passenger service. She charged that she was injured while a passenger on a train of the Louisville & Nashville Railway Company; that her in-

juries were total and continuous; that she would continue to be thus disabled during the remainder of her life; that the sum of $840.37 had been paid, covering hospital expenses and the weekly installments from May 16, 1922, to January 2, 1923; that on the latter date further payments were refused. By an amended declaration she averred that the action of the company in refusing to make further payments constituted an abandonment, breach, and repudiation of the contract. She sought damages for such breach. Trial by jury was waived. The trial court rendered judgment for plaintiff in the sum of $21,518.98. Defendant contended in the appellate court that the amended pleading failed to state a cause of action because it was sought to recover upon an anticipatory breach of a unilateral contract for the payment of money at a future time. The court disagreed with that contention. It said: "This is a single contract. The fact that defendant is required to perform in part at stated intervals does not change its unitary character into a multiplicity of contracts, each relating to but one installment. If there has been an actual breach, coupled with repudiation, of this one contract, then, to avoid a multiplicity of suits, public policy requires that plaintiff may maintain but one action for the entire damages occasioned by such breach." The case was decided by a divided court. Certiorari was denied. 273 U. S. 722, 47 S. Ct. 112, 71 L. Ed. 859. The judgment being for damages computed on the basis of $25 per week during life expectancy was closely akin, if not tantamount in result, to recovering future payments under the policy. Such recovery was sanctioned because the company had breached the contract by failing to make payment at the time and in the manner provided. So, as previously said, it follows from the verdict of the jury in this case that defendant breached the contract when it failed and refused to make payment in one of the authorized methods touching time and amount, following receipt of proof of disability.

The policy involved in Ætna Life Ins. Co. v. Phifer, 160 Ark. 98, 254 S. W. 335, 337, provided for payment at the rate of $20 per month during permanent disability. The insured submitted proof of such disability. The company refused payment. Insured alleged wrongful breach of the contract and sought damages in the sum of $2,000. A verdict was returned and judgment entered in his favor for $1,000. The court said: "This denial of liability justified appellee, who was not in default, in treating the contract as breached and suing for gross damages, which he did. The measure of his damages was the amount appellant would have been required to pay him under the contract, if it had not breached it, reduced to its present value. According to the mortuary tables introduced in evidence, appellee had an expectancy of 28.18 years. The payment provided for in the contract of the $2,000 policy was $20 a month. The present value thereof, according to appellee's expectancy, was more than $1,000."

It has been held that recovery cannot be had for future installments. Robinson v. Exempt Fire Co., 103 Cal. 1, 36 P. 955, 24 L. R. A. 715, 42 Am. St. Rep. 93; Mid-Continent Life Ins. Co. v. Walker, 128 Okl. 75, 260 P. 1109; Atkinson v. Railroad Employees Mut. Relief Society, 160 Tenn. 158, 22 S.W.(2d) 631. But in those cases and others to the same effect, only one method of payment was provided. No question of the right of a party to exercise the privilege of election between two methods of payment after breach of the contract was involved or decided. And recovery in advance of the due date likewise has been denied unless the contract be executory on both sides, that is, requiring future performance of interdependent obligations. Roehm v. Horst, 178 U. S. 1, 20 S. Ct. 780, 44 L. Ed. 953; Moore v. Security Trust & Life Ins. Co. (C. C. A. 8) 168 F. 496; Parks v. Maryland Casualty Co. (D. C.) 59 F.(2d) 736; Kithcart v. Metropolitan Life Ins. Co. (D. C.) 1 F. Supp. 719; Wyll v. Pacific Mut. Life Ins. Co. (D. C.) 3 F. Supp. 483. But that question is not involved or decided here. We do not hold that plaintiff is entitled to recover for future installments, or in damages measured by their present value. Our conclusion is that by its failure and refusal to pay the insured within the time and in the manner specified in either method, by allowing such time to pass long since, thereby breaching the contract, defendant surrendered its right to elect between the two methods.

The court instructed the jury definitely that they could not return a verdict for plaintiff unless they found that he became and was totally and permanently disabled while under sixty years of age and during his employment by defendant. Under such instructions, the jury found those facts in his favor. That finding and the further one that he should recover in the total sum of $8,000 rendered the verdict complete. The remainder respecting payment in one sum or in installments was surplusage. Surplusage in a verdict may be disregarded by the court in entering judgment thereon. Pennsylvania

682

Ry. Co. v. Logansport Loan & Trust Co. (C. C. A. 7) 29 F.(2d) 1; Dextone Co. v. Building Trades Council (C. C. A. 2) 60 F.(2d) 47; Doty v. Western & Southern Life Ins. Co., 223 Mo. App. 360, 16 S.W.(2d) 712; Hall v. McClure, 112 Kan. 752, 212 P. 875, 30 A. L. R. 782; Lake Erie & W. R. Co. v. Halleck, 78 Ind. App. 495, 136 N. E. 39; Scrambling Co. v. Tennant Drug Co., 25 Ohio App. 197, 158 N. E. 282; Pearson v. Arlington Dock Co., 111 Wash. 14, 189 P. 559. Judgment should have been rendered for $8,000. The remainder of the verdict should have been disregarded.

We are mindful of the cases of United States v. Worley, 281 U. S. 339, 50 S. Ct. 291, 74 L. Ed. 887; Id. (C. C. A.) 42 F.(2d) 197, United States v. Winkler (C. C. A. 8) 52 F.(2d) 369, and others in harmony therewith, holding that in a suit upon a war-risk insurance contract, judgment may not be entered for future installments. The rule, obtaining in cases of that character, is founded upon relevant statutory provisions relating exclusively to such cases. Section 512, 38 USCA, provides that, except as otherwise specified therein, the insurance shall be payable in two hundred and forty monthly installments. Section 514 provides that if the designated beneficiary does not survive the insured, or dies before receiving all of the two hundred and forty installments, the estate of the insured shall receive the present value of the installments thereafter to be paid. Both sections of the statute are mandatory. The United States gave its consent to be sued with those limitations attached and, of course, it had a perfect right to do that. Obviously, the judgment could not include future installments, because if the beneficiary should die during the two hundred and forty months' period the United States would immediately become liable, under section 514, to the estate of the insured for the then value of the installments properly maturing thereafter, thus bringing about a double liability. The statute specifying that the insurance shall be payable in monthly installments is mandatory; it is not optional, and no authority is vested in any agency to waive it or make the method of payment optional. No such strictures were imposed upon the parties in the case now under consideration. In determining their contractual obligations, they appropriately provided the alternative methods of payment subject to the election of the insurance company.

We find no error in the trial proceedings, but the judgment on the verdict should have

been entered for $8,000 and costs. The cause is remanded to the lower court, with directions to modify the judgment in accordance herewith, and as so modified, it will stand affirmed.

PHILLIPS, Circuit Judge (dissenting).

The pertinent provisions of the group policy are set out in Note 1[a], and the certificates issued to insured in Note 1[b].

Note 1[a].

"Disability Before Age 60:

"Waiver of Premiums—Payment of Insurance. If any person insured under this Policy shall become totally and permanently disabled, either physically or mentally, from any cause whatsoever, to such an extent that he (or she) is rendered wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his (or her) lifetime, and if such disability shall occur at any time after the payment of the first premium on account of such insurance, while this Policy is in full force and effect and the said person is less than sixty years of age, the Company, upon receipt of due proof of such disability, will grant the following benefits:

"(1) Waiver of Premiums.—The Company will, during successive renewal periods, waive the payment of that portion of each premium under this Policy applicable to the insurance on the life of such disabled person the due date of which, as specified on the first page hereof, shall occur after receipt by the Company of said proof of such disability.

"(2) Payment of Insurance.—The Company will, in addition to waiving the premiums, pay to said person at its Home Office the amount insured on his (or her) life, *as the Employer may request, either in one sum six months after the Company shall have received such proof, or in sixty monthly installments during five years, each installment to be of the amount of $17.95 per $1,000 of insurance payable.* The first of such monthly installments shall be paid immediately upon receipt by the Company of due proof of such disability and subsequent monthly installments shall be paid on the first day of each month thereafter. (Italics mine.)

"The total amount of insurance under this Policy on the life of the said person at any time after one or more of such installments have been paid shall not exceed the commuted value of such of said installments as are not then due computed at the rate of three and one-half per cent per annum compound interest.

"Any insurance remaining at the death of the said person shall be paid to the Beneficiary or Beneficiaries of said person. * * *

"Proof of Continuance of Disability. Notwithstanding the acceptance by the Company of proof of total and permanent disability, the said person, upon demand by the Company from time to time, but not oftener than once a year after the disability of said person has continued for two full years, for the purpose of verifying that such disability is actually permanent and not temporary, shall furnish due proof that he (or she) actually continues in the state of disability defined above. In case of failure to furnish such proof, no further proportional parts of the premium on account of said person's insurance shall be waived and no further monthly installments shall be paid on account of such disability and any insurance on the life of said person then remaining under this policy may continue to be renewed subject to the terms of the Policy. * * * "

Note 1[b].

"The Prudential Insurance Company of America in accordance with and subject to the terms and conditions of its Group Policy No. 1690, insuring the

It will be noted from the italicized portion of the provisions of the policy set out in Note 1ᵃ that there were alternative methods for payment of the total and permanent disability benefits, one in the lump sum of $8,000 and the other in installments aggregating $8,616, as the employer under the group policy might elect. The employer in the instant case is also the Insurance Company.

The majority hold that when the Insurance Company failed, after the proofs of disability were filed, to pay the total and permanent disability benefits in accordance with either alternative, it breached the contract, and thereupon the right of election as between the alternatives inured to the insured; and that by bringing an action to recover the installments in a lump sum, insured elected that alternative.

It may be observed that the proofs of disability were sworn to on August 2, 1932, and forwarded by mail to the local agent of the Insurance Company at Salt Lake City on August 3, 1932, and that on the same day insured commenced the instant action, wherein he prayed for recovery of total and permanent disability benefits of $8,000 in a lump sum.

Payment in a lump sum, were that alternative properly elected, was not due under the terms of the policy until six months after proof of disability had been received by the Insurance Company, or until six months after the instant action had been commenced.

At the close of the evidence, the Insurance Company moved the court to instruct the jury to return a verdict in its favor on the grounds (1) that the evidence did not establish total and permanent disability, and (2) that it did not establish that insured suffered such disability subsequently to the issuance of the policy of insurance. This motion was denied. The Insurance Company then requested the court to instruct the jury that if it found for the insured it should assess his damages at $143.60 with 8 per cent interest from August 3, 1932. This request was denied.

The court submitted one form of verdict finding for the Insurance Company; and one finding for the insured, being the verdict returned by the jury and set out in the majority opinion.

The Insurance Company excepted to the form of the verdict for insured on the ground that it had the election to pay either in installments or in a lump sum, and that insured in this action could recover only the amount of the first installment, since that was the only amount due at the time this action was commenced.

The court held that the Insurance Company, by its request to limit the recovery to one installment, had elected to pay the benefits in installments, and entered a judgment on the verdict. The material portions of the judgment are set out in the majority opinion.

Assuming that the Insurance Company breached both alternative provisions by failing, after proofs of disability were made, to choose one of the alternatives and to pay in accordance therewith, the right of election did not, in my opinion, because thereof, inure to the benefit of the insured.

Under a true alternative contract where the choice of alternatives is in the promisor and he breaches the contract before he has made an election, the measure of damages is the value of the alternative least onerous to the promisor (Holliday & Co. v. Highland Iron & Steel Co., 43 Ind. App. 342, 87 N. E. 249; Pope v. Campbell, Hardin (3 Ky.) 34, 3 Am. Dec. 722; White v. Green, 19 Ky. (3 T. B. Mon.) 155; Hixon v. Hixon, 7 Humph. (Tenn.) 33; Kimball Bros. v. Deere, Wells & Co., 108 Iowa, 676, 77 N. W. 1041; Cochburn v. Alexander, 6 C. B. 791, 814; Williston on Contracts, § 1407, p. 2498); or the least valuable alternative (Sedgwick on Damages [9th Ed.] vol. 1, § 421); or in accordance with the alternative that will result in the smallest recovery. Restatement, Contracts, § 344.

Care must be exercised to distinguish between truly alternative contracts and contracts which provide for the payment of liq-

lives of a group of the employees of The Prudential Insurance Company of America, Newark, New Jersey, has insured the life of Robert Faulkner, * * *.

"Total and Permanent Disability. If the said employee, while less than sixty years of age, and while the insurance on the life of said employee under said Policy is in full force and effect, shall become totally and permanently disabled or physically or mentally incapacitated to such an extent that he or she by reason of such disability or incapacity is rendered wholly, continuously and permanently unable to perform any work for any kind of compensation of financial value during the remainder of his or her lifetime, said amount of insurance will be paid to said employee either in one sum six months after the Company has received due proof of such disability or incapacity, or in monthly installments during five years, the first installment to be payable immediately upon receipt by the Company of due proof of such disability or incapacity; in accordance with the provisions of said Policy. The disability benefits will be granted subject to cessation, in accordance with the provisions of the Policy, should such disability or incapacity prove to be temporary and not permanent. * * *"

uidated damages in case of breach, and also contracts under which there is a primary and secondary obligation and the promisor is to become liable upon the secondary obligation only in the event he fails to perform the primary obligation. Williston on Contracts, § 1407, p. 2498; Restatement, Contracts, § 344.

The contract here clearly does not fall within the two classes of contracts last mentioned, but is a true alternative contract.

There are cases which hold that where the promisor breaches a contract by failing to perform any one of the alternatives, the choice of alternatives inures to the promisee, and that he may sue and predicate his measure of damages and recovery on the alternative he chooses. See Note 2.

With respect to the cases cited in Note 2, Mr. Williston in his work on Contracts, at section 1407, says:

"An inconsistent and, it seems, erroneous rule has been laid down in a few cases, which, relying on a passage from Coke relating to grants rather than contracts, hold that if the promisor fails to make an election the promisee thereupon has the option. Such a rule would entitle the promisee after breach to recover damages based on the performance most onerous to the defendant. Doubtless it is possible for the parties to make a contract that until a certain time the promisor may choose but that thereafter the promisee shall have the choice. There seems no propriety, however, where the parties have not made such a contract in the court making it for them."

In Restatement, Contracts, in the comment under section 325, "Breach of an Alternative Contract," it is stated:

"Where the ultimate time has arrived when some performance must be rendered by the promisor, and he neither performs nor elects, it cannot be said that the promisor is under a duty to perform any particular one of the alternatives. The breach of duty is the failure to render any one of the performances promised. As to the damages recoverable for such a breach see Sec. 344."

Note 2.
Virginia Export Coal Co. v. Rowland Land Co., 100 W. Va. 559, 131 S. E. 253; Ellison v. Boyd, 130 S. C. 269, 125 S. E. 493, 36 A. L. R. 855; Warren Corbin v. Fairbanks, Barlow & Co., 56 Vt. 538; Patchin v. Swift, 21 Vt. 292; Phillips v. Cornelius (Miss.) 28 So. 871; Coles v. Peck, 96 Ind. 333, 49 Am. Rep. 161. See, also, Travelers' Ins. Co. v. Turner, 239 Ky. 191, 39 S.W.(2d) 216, cited in the majority opinion.

Section 344, supra, reads as follows:

"The damages for breach of an alternative contract are determined in accordance with that one of the alternatives that is chosen by the party having an election, or, in case of breach without an election, in accordance with the alternative that will result in the smallest recovery."

The principle announced in the cases cited in Note 2 is of course inconsistent with the doctrine of predicating the damages on the least onerous or the least valuable alternative. The application of that principle results in the imposing upon the promisor, as a penalty for the breach, a greater obligation or duty than does the contract itself; its effect is to increase the contractual rights of the promisee upon a breach by the promisor when the contract does not so provide, and to make a new contract for the parties.

Furthermore, if the rule laid down in such cases and by the majority opinion is applied here, it will take from the Insurance Company a valuable right reserved by the contract, namely, the right, where the disability benefits are to be paid in installments, to cease payment thereof and again exact premiums, in the event of the insured's recovery from such disability before the full amount of the benefits has been paid.

The importance of the right of the Insurance Company to require proof of continued disability is apparent. Therein lies its only protection against fraud or malingering or unexpected recoveries from actual disabilities. Without it, a full recovery may be had for a permanent disability that ultimately may prove to be a sham or mistaken prognosis.

This contractual right to require additional proof of continued disability makes the right, also reserved by the contract, to elect between alternatives of paramount importance to the Insurance Company in cases where it has reason to doubt the permanence of the claimed disability.

But the doctrine of the majority opinion takes these contractual rights from the Insurance Company, in cases where it doubts the existence of disability and in good faith submits to a court the question of whether the insured's claim of disability is well founded in fact. Under that doctrine the Insurance Company must either forfeit its right to its day in court on a bona fide defense to a claim, or waive its contractual rights to pay in installments and require proof of continued disability. Therein I respectfully as-

sert is the underlying fallacy of the majority opinion. It imposes a severe penalty—the forfeiture of valuable contract rights—for asking a court to determine a contested question of fact. The statutes provide that the losing party in an action at law shall pay the court costs; to impose more severe penalties is to legislate where Congress has not.

Like every other citizen, the Insurance Company here, if in good faith it believed the disability insured against had not happened, had the right to have that issue adjudicated by courts organized for that purpose. To say to it that if you seek such an adjudication and the issue is determined against you, you must not only pay the court costs, but must have your contract emasculated, is not in keeping with the cherished theory that the courts exist to determine the bona fide controversies of our citizens.

Doctor Hummer testified that he examined insured in the latter part of February or the early part of March, 1932, and on a second occasion shortly thereafter; that he subjected him to the usual examinations and tests for heart disease and found no evidence of angina pectoris or myocarditis, and that his heart was normal in size and functioned normally.

Doctor Critchlow, a specialist in internal medicine and an examiner for the Veterans' Bureau, testified that he examined the insured in April, 1931, and in September, 1931; that he made a special examination of the heart and found that insured had no evidence of angina pectoris, chronic myocarditis or mitral heart and that his heart was normal.

Doctor Ossman, an examiner for the Veterans' Bureau, testified that he examined insured in 1922 and found no indications of organic heart disease; that he examined him again in December, 1924, and found his temperature, pulse, blood pressure, and heart normal, and no indications of heart disease.

Doctor Kerby, a specialist in X-ray diagnosis, testified that the X-ray pictures of insured's heart, introduced by insured, showed a normal heart and no indications of chronic heart disease.

The foregoing evidence on which the Insurance Company mainly rested its defense demonstrated its good faith and fully justified it in asking the verdict of a jury on the issue of disability.

There is another reason why, in my opinion, the Insurance Company did not lose its right of election. The insurance contract was a true alternative contract and the right to choose which alternative should be performed upon the happening of the contingency of total and permanent disability was in the Insurance Company. It did not deny its obligation under the contract. It admitted the promise, but said it was conditional and that the condition, namely, the total and permanent disability of the insured, had not occurred. It demanded, as was its right, that the issue of such disability be determined by a court of competent jurisdiction. The insured sued upon the contract. He was entitled under the contract, upon the happening of the contingency, to payments in accordance with one of the alternatives, but no particular one. When the court determined the condition had occurred, the right of the insured to receive, and the duty of the Insurance Company to make payments in accordance with one of the alternatives was established. It then became the duty of the Insurance Company to elect in order for the court to enter a proper judgment. Had the Insurance Company elected the more onerous alternative, the insured would not have been injured; and had it elected the less onerous, the insured would have recovered judgment for all he was entitled to under the contract. I fail to see how the failure to elect at an earlier date would have in any wise impaired insured's rights under the contract, nor any reason why an earlier election should have been required.

This procedure is approved by Mr. Williston in suits for specific performance and I see no distinction between such a suit and an action on a contract,—where the promise is to pay a stipulated amount in money,—to recover the amount of money promised. See Williston on Contracts, vol. III, p. 2499, Note 14, and Taylor v. Mathews, 53 Fla. 776, 787, 44 So. 146; Smith v. Rector, 107 N. Y. 610, 14 N. E. 825; Greenleaf v. Blakeman, 40 App. Div. 371, 58 N. Y. S. 76. The trial court held as above stated that the Insurance Company had elected the alternative for payment in installments.

But if the Insurance Company by failing, after receipt of the proof of disability, to pay in accordance with either alternative lost its right of election, the right to choose did not thereby pass to the insured. The Insurance Company either in a suit on the contract or for damages for its breach was liable at most for a judgment predicated on the less onerous alternative. The less onerous was payment in installments. Eight thousand dollars was more than the present value of the future installments computed on the statutory rate of interest, 8 per cent. Payment.

under the installment alternative exacts immediately a less amount of money, and, in the possible event of insured's recovery before all the installments had been paid, it would ultimately exact a less amount of money. At least it cannot be said that the payment in a lump sum would be less onerous than the payment in installments and therefore the trial court erred in adopting the alternative providing for payment in installments.

Furthermore, the insured took no exception to the verdict or judgment, both of which provided for payment in installments, and I fail to see why on this appeal we should grant him relief he does not seek.

The judgment, therefore, in my opinion, should be based on the alternative providing for payment in installments.

Should it have included future installments? In the event of the death of the insured before the end of the five-year period, under the judgment the Insurance Company would be liable to the personal representatives of the insured for the installments remaining unpaid, and also the beneficiary for a sum equal to the commuted value of the unpaid installments. The contract contemplated no such double payment. Furthermore, under the judgment the Insurance Company would be liable, in the event the insured recovered from such disability before all of the installments had been paid, for installments accruing after such recovery, notwithstanding the provisions of the policy to the contrary. For these reasons the judgment should have been limited to the first installment, or, at the most, to the installments past due when the judgment was rendered. United States v. Worley, 281 U. S. 339, 50 S. Ct. 291, 74 L. Ed. 887; United States v. Andrews (C. C. A. 10) 43 F.(2d) 80; United States v. Napoleon (C. C. A. 5) 296 F. 811.

The above decisions hold that judgment for future total and permanent disability benefits upon a war risk insurance policy is erroneous, because such a judgment would subject the United States to a double liability, as in the instant case, in the event of the death of the insured before all of such installments had matured.

The question of whether the insured in an action for damages might have recovered the present worth of the future installments, I do not stop to consider. The action was to recover on the contract, not damages for its breach, and the majority opinion after discussing that question says it is not involved or decided.

For the reasons above stated, it is my opinion that the case should be reversed with instructions to enter a judgment for the amount of the installments due when the verdict was returned.